TRAVIS F. CHANCE, ESQ., Nevada Bar No. 13800
tchance@bhfs.com
BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, Nevada 89106
Telephone: 702.382.2101
Facsimile: 702.382.8135

SEAN S. CUFF, ESQ. (will comply with
LR IA 11-2 within 14 days)
scuff@bhfs.com
BROWNSTEIN HYATT FARBER SCHRECK, LLP
675 15th Street, Suite 2900
Denver, CO 80202
Telephone: 303.223.1100

*Attorneys for Plaintiff Daniel Petersen*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| DANIEL PETERSEN, Plaintiff, v. KELLY MILLS EVERS, Defendant. | CASE NO. TBA **COMPLAINT FOR SLANDER AND DEMAND FOR JURY TRIAL** |

Plaintiff DANIEL PETERSEN (“**Mr. Petersen**”), by and through his counsel of record, the law firm of Brownstein Hyatt Farber Schreck, LLP, submits his Complaint for Slander against Defendant KELLY MILLS EVERS (“**Defendant**”), alleging as follows:

**INTRODUCTION**

This case concerns false and defamatory statements lodged against Mr. Petersen, a concerned property owner who became the center of Defendant’s vendetta against him. That vendetta began when Mr. Petersen raised legitimate concerns about Defendant’s fiduciary shortcomings and mismanagement as the board President of the Coeur du Lac Condominium Homeowners Association (“**CDL**”), where Mr. Petersen owns a unit.

In the summer of 2024, Defendant, then-CDL board President, informed CDL unit owners that CDL’s insurer declined renewal of the association’s policy, purportedly because of wildfire risks, and that the anticipated premium for replacement insurance would likely be significant and

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
100 North City Parkway, Suite 1600
Las Vegas, Nevada 89106

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
100 North City Parkway, Suite 1600
Las Vegas, Nevada 89106

require increases in dues and the issuance of assessments. Mr. Petersen and his wife have clients in their business that include some of the nation's top insurers. So in an attempt to assist the board in finding affordable replacement coverage, they shared those contacts with members of the CDL board. After receiving no response from the board member handling the insurance issues, and with the encouragement of another board member, they worked directly with one of their top insurance contacts and were ultimately referred to a local Nevada agent by their contact.

That agent expressed difficulties in obtaining CDL's loss run reports, which contain information necessary for an insurer to provide a quote, so Mr. Petersen secured those reports from CDL's current insurer and its insurer before that one. Those reports disclosed that a previous property damage claim was made by a unit owner, a claim that never should have been made on CDL's policy and instead should have been made on the unit owner's individual policy. But that claim was never disclosed to owners – including Mr. Petersen – by Defendant and Defendant improperly allowed the claim to be made on CDL's policy.

As a result of that and Defendant's other fiduciary shortcomings, Mr. Petersen made a statutorily compliant petition to recall Defendant from the board, supported by the necessary number of unit owners. Mr. Petersen's exercise of his free speech and statutorily protected rights was apparently too much for Defendant and became her breaking point. Soon after, at an open board meeting, Defendant was given time to present her rebuttal to the recall petition. Instead of legitimately addressing the concerns that were the impetus for it, Defendant went "all in" on a defamatory tirade and falsely accused Mr. Petersen of committing felony insurance fraud.

Defendant's accusation went far beyond any legitimate discourse on her impending recall. No common-interest community owner should face slander in retaliation for simply trying to protect the best interests of that community. Mr. Petersen thus brings this action to vindicate his good name and reputation.

**PARTIES**

1. Mr. Petersen, an individual, is a citizen of Idaho.

2. Defendant, an individual, is a citizen of California.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332. Mr. Petersen is a citizen of Idaho, while Defendant is a citizen of California. Thus, there is complete diversity between the parties. Moreover, this is an action for slander per se seeking, among other things, presumed damages and so the amount in controversy exceeds $75,000.

4. At the time of the slander described herein, Mr. Petersen was a resident of Washoe County, Nevada. Defendant is therefore subject to specific personal jurisdiction in Nevada because: (i) she expressly directed her intentional conduct at Nevada and caused harm she knew would be, and intended to be, suffered in Nevada; and (ii) Defendant's wrongful conduct arose out of her position as President of the CDL board, a position she could only hold by owning real property within CDL.

5. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the Complaint occurred in Nevada.

6. Under LR IA 1-6, this action is properly assigned to the unofficial Northern Division because that is where the conduct giving rise to Mr. Petersen's claims originated and where the harm was felt.

## GENERAL ALLEGATIONS

### *The Coeur du Lac Condominium Homeowners Association*

7. CDL is a small common-interest community that consists of 58 condominium units and is located in Incline Village, Nevada.

8. Defendant Evers served as the President of the CDL board from July 2023 to April 2025.

9. On July 26, 2023, a unit owner submitted a claim on CDL's insurance policy related to water damage to that owner's unit that also damaged the unit below it.

10. Defendant, as CDL President, permitted that claim to be submitted to and paid by CDL's insurer, American Family Insurance ("**AFI**"), when it should have been submitted to and paid by the unit owner's insurer because it fell outside the scope of property covered by CDL's policy.



BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
100 North City Parkway, Suite 1600
Las Vegas, Nevada 89106

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
100 North City Parkway, Suite 1600
Las Vegas, Nevada 89106

11. Because of the negligent unit owner's claim on CDL's policy and for unrelated wildfire risk concerns, AFI issued a non-renewal notice for CDL's policy sometime around the summer of 2024, effective October 31, 2024.

12. Defendant, as CDL board President, issued community-wide letters in July and September 2024, disclosing that notice, estimating that replacement insurance premiums would likely increase upwards of 10-fold, from $48,000 to $480,000 per year, and indicating that such an increase would necessarily require assessments from unit owners.

13. As the termination date for AFI's coverage grew nearer and without any confirmed replacement coverage, Mr. Petersen and his wife, Sharon Petersen ("**Mrs. Petersen**"), grew understandably concerned that all unit owners would be stuck paying for an exorbitant increase in insurance premium.

14. In late August/early September 2024, the Petersens, who through their business work with top commercial insurance agents nationwide, informed then-board member Rob Penrose of those contacts. Mr. Penrose directed them to share those contacts with board member Kim Lighthart so that the board could engage them for purposes of avoiding a lapse in insurance, find other coverage options for CDL, and prevent imposing extreme assessments and dues increases on all unit owners.

15. After forwarding those contacts, Ms. Lighthart did not respond. Given that, Mrs. Petersen told Mr. Penrose and offered to reach out directly for a quote if she could get it and if so, would forward it to the board. Mr. Penrose encouraged her to do so.

16. Mrs. Petersen contacted one of her top insurance industry contacts who referred her to a broker. When attempting to prepare a quote, the broker was unable to obtain a report of claims made on prior CDL policies (so called "loss-run reports"), critical documents for CDL to have in order to obtain competitive quotes because they detail its claims history.

17. So Mr. Petersen first communicated with CDL's then-current insurer AFI and obtained AFI's loss-run report.

18. Because CDL would need more than the two years of claims history shown on AFI's report, Mr. Petersen contacted the CDL insurer before AFI, Menath Insurance ("**Menath**"), to obtain its loss-run report.

19. The Menath agent with which Mr. Petersen dealt asked to provide a quote for replacement coverage. Mr. Petersen declined.

20. Mr. Petersen later followed up with that agent on the status of the loss-run report and the agent asked to quote a second time. Mr. Petersen did not object but he never represented himself as any authorized agent of the board. He conveyed that the quote provided would be forwarded to the CDL board for further handling and consideration.

21. Days before the October 31, 2024, termination date of the AFI policy, Menath sent Mr. Petersen its quote and told him that other forms and documents would need to be filled out if CDL wanted to submit an application. Mr. Petersen sent that quote – the only one the Petersens ever obtained – to the CDL board.

22. Defendant, in the meantime, obtained an insurance quote of her own from one of her preferred insurance brokers based in California where she lives, Alliant Insurance Services.

23. After the Menath quote was provided to the CDL board, the Alliant quote obtained by Defendant materially changed in that its premium decreased by tens of thousands of dollars and added cyber liability coverage (a requirement under Nevada law) that was included in Menath's quote but not Alliant's original one. In other words, Defendant relied on the Menath quote and submitted it to Alliant in order to obtain a revised Alliant quote.

24. Ultimately, the board approved the Alliant quote. Alliant picked up coverage with conditions, providing CDL around 30 days to remediate aluminum wiring in certain of its subpanels (because of fire hazards/risks).

25. In all interactions with insurance companies, agents, and brokers, neither Mr. Petersen nor Mrs. Petersen ever submitted any applications for insurance on behalf of CDL or any papers that might be construed as an application; did not present themselves as a CDL board member; did not fill out any paperwork relative to an insurance application, including after receipt

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
100 North City Parkway, Suite 1600
Las Vegas, Nevada 89106

of Menath's quote; and all third parties knew the Petersens were not board members and any quotes provided would be forwarded to the board for review and handling.

***Defendant's Defamatory Assault Against Mr. Petersen***

26. After reviewing AFI's loss-run report, Mr. Petersen determined that Defendant allowed a unit owner to make a claim related to water damage on the AFI policy, which severely impaired CDL's ability to obtain insurance coverage, especially given the wildfire risk issue. But Defendant never disclosed that fact to the CDL unit owners.

27. Concerned for CDL's ability to obtain affordable insurance coverage in light of those facts, Mr. Petersen rightfully and legitimately attempted to question Defendant's conduct in handling the HOA's insurance issues at CDL's September 29, 2024, board meeting, but he was purposely muted during it.

28. As a result, Mr. Petersen sent a letter to Defendant and the rest of the board, laying out his concerns about how the unit owner's claim was handled and posing questions about the Alliant quote.

29. On October 20, 2024, Mr. Petersen issued a letter to all unit owners expressing his concerns related to the negligent unit owner's claim, particularly his disappointment of the claim not being disclosed to unit owners, its true effect on all unit owners' insurance premiums, Defendant's lack of transparency, and her subpar efforts in properly addressing this issue.

30. On April 5, 2025, Mr. Petersen obtained the requisite number of unit-owner signatures and submitted a petition seeking Defendant's recall as CDL President, having lost trust and confidence in her performance and fitness to serve in that role.

31. On April 18, 2025, CDL held a board meeting open to the owners, which included agenda items for discussing the insurance coverage problems confronting CDL and for Defendant to respond to the recall petition.

32. Rather than address the recall petition legitimately and in a professional manner in her capacity as board President, Defendant decided to use that time to defame Mr. Petersen.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
100 North City Parkway, Suite 1600
Las Vegas, Nevada 89106

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
100 North City Parkway, Suite 1600
Las Vegas, Nevada 89106

33. During her near hour-long diatribe, Defendant displayed a PowerPoint slide that set out the text of NRS 686A.2815(1)(a), one of the definitions of insurance fraud:

> 1. "Insurance fraud" means knowingly and willfully: (a) Presenting or causing to be presented any statement to an insurer, a reinsurer, a producer, a broker or any agent thereof, if the person who presents or causes the presentation of the statement knows that the statement conceals or omits facts, or contains false or misleading information concerning any fact material to an application for the issuance of a policy of insurance.

34. Defendant then cloaked herself with the authority of judge and jury, declaring:

> Petersen's intentional omission of the material facts to the Menath agent (a) that we had aluminum wiring in the subpanels that he didn't disclose and/or (b) that he was not acting on behalf of the board, in my opinion, constitutes insurance fraud.
>
> In making applications, the applicant has to perform due diligence and disclose all relevant material facts to the insurer. He did not.
>
> This is huge – had the board relied on Petersen's false quote and later suffered a loss, say a fire, the impact to our community would have been disastrous. Every insurance claim made under the HOA master policy would have been denied. The insurance company would have returned our premium, leaving CDL uninsured and devastated. This would have been a catastrophic uncovered loss and each of us would end up with less than $2000 to rebuild a complex that is valued in the range of $25 million under the master policy. Let that sink in for a moment.

("**Defamatory Statement**").

35. Viewed as a whole and in context, the Defamatory Statement conveyed the false and defamatory message that Mr. Petersen committed insurance fraud by knowingly making applications for insurance to Menath on behalf of CDL based on false, omitted, and misleading information – i.e., by knowingly failing to disclose that CDL has aluminum wiring in subpanels and that he was not acting on behalf of the board in doing so, facts that would be material to any such application.

36. Indeed, during the parts of her speech before and after the Defamatory Statement, Defendant discussed the insurance fiasco and Mr. Petersen's involvement with it, reinforcing that in context, Defendant was accusing Mr. Petersen of applying for insurance on behalf of CDL based on fraudulent information.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
100 North City Parkway, Suite 1600
Las Vegas, Nevada 89106

37. That Defendant's defamatory speech conveyed that false message is confirmed by the fact that another board member expressed discomfort in accusing a unit owner—Mr. Petersen—of insurance fraud, as Defendant had just done.

38. Defendant's Defamatory Statement is a false statement of fact because Mr. Petersen never submitted or made any applications for insurance to Menath, was never engaging with Menath to do so, and never represented himself as any authorized agent of the board.

39. Instead, Mr. Petersen merely obtained a loss-run report from Menath to help the board secure alternative insurance quotes and mitigate an almost tenfold increase in insurance costs to be borne by all unit owners.

40. The Defamatory Statement was also false because it was ***Menath*** that unilaterally provided a quote to Mr. Petersen based information it already had. And Menath was a previous CDL insurer and so must have already been aware of the aluminum wiring contained within the units, such that Mr. Petersen could not have withheld that "material" fact from them, as Defendant wrongfully and falsely contended. Further, Menath at all times knew that Mr. Petersen was not on the board and that any quotes would be provided to the board for handling and review. Thus, no part of the Defamatory Statement is even close to true.

41. Mr. Petersen brings this action to hold Defendant accountable for her malicious, false, defamatory attacks and to vindicate his reputation.

**FIRST CLAIM FOR RELIEF**
**(Slander Per Se)**

42. Overall and in context, the Defamatory Statement accuses Mr. Petersen of committing insurance fraud, a Category D felony, by knowingly making applications for insurance to Menath on behalf of CDL based on false, omitted, and misleading information – i.e., by knowingly failing to disclose that CDL has aluminum wiring in subpanels and that he was not acting on behalf of the board in doing so, facts that would be material to any such application.

43. That Statement is defamatory because it tends to lower Mr. Petersen's reputation in the estimation of the community.

44. The Defamatory Statement is a false statement of fact for the reasons already given.

45. Defendant published the Defamatory Statement to third parties — the unit owners in attendance at the HOA board meeting — and did so out of spite, ill will, and malice toward Mr. Petersen.

46. Defendant acted negligently when publishing the Defamatory Statement because she failed to act with reasonable care as to whether it was false.

47. Alternatively, and even though Mr. Petersen is not a public figure and the Defamatory Statement does not concern a matter of public interest, Defendant nevertheless made it with actual malice:

a. When she made the Defamatory Statement, Defendant was the President of the board and had worked on the same insurance renewal issues that were the subject of that statement. She therefore knew Mr. Petersen was not submitting insurance applications on behalf of CDL and that instead, Mr. Petersen had merely forwarded an unsolicited quote from Menath.

b. Multiple other members of the CDL board knew that Mr. Petersen was simply utilizing his contacts to obtain quotes for CDL, not applying for any insurance policies on its behalf, and those board members encouraged assistance from him. Defendant knew that, as she acknowledged as much in an October 3, 2024, letter to Mr. Petersen.

c. Defendant was not party to the conversations between Mr. Petersen and Menath and so had no direct or personal knowledge of what he did or did not say or did or did not represent when she made the Defamatory Statement.

d. Defendant knew that Menath was CDL's insurer prior to AFI and only a reckless person would claim that Menath, as a prior insurer that had previously gone through extensive due diligence before issuing a policy to CDL, would not have already known about the aluminum wiring at CDL.

e. Most importantly, Defendant ***relied on the Menath quote and submitted it to Alliant so that Alliant could make its quote more inclusive and more competitive.*** If Defendant truly knew, believed, or thought that Mr. Petersen



BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
100 North City Parkway, Suite 1600
Las Vegas, Nevada 89106

provided materially misleading or false information that resulted in the Menath quote, she would not have relied on it to have Alliant revise its own quote.

As a result, Defendant made the Defamatory Statement knowing that it was false or, at minimum, with reckless disregard for whether it was true. And because she was board President and involved in CDL's insurance problems, she also knew that American Family Insurance and Menath would have already been aware of the aluminum wiring at CDL.

48. As a direct and proximate result of Defendant's slander, Mr. Petersen has suffered general damages, including harm to his reputation, physical harms, and emotional harms, as well as special damages in the form of medical bills for treating physical harms that the Defamatory Statement caused. Mr. Petersen is further entitled to an award of presumed damages, because the Defamatory Statement is slander per se since it accuses him of committing a felony, in an amount exceeding $75,000.

49. Defendant is further liable for all reasonably foreseeable republications of the Defamatory Statement by others, if any.

50. Defendant's conduct in making the Defamatory Statement was willful, wanton, and malicious and done with a conscious disregard for Mr. Petersen's rights. Defendant made the Defamatory Statement for retributive purposes, with an intent to harm Mr. Petersen, and with spite and ill will toward Mr. Petersen. Therefore, an award of punitive and exemplary damages, subject to no statutory cap, against Defendant is both appropriate and necessary to afford Mr. Petersen complete relief.

**PRAYER FOR RELIEF**

**WHEREFORE**, Mr. Petersen prays for the following relief from this Court:

1. Compensatory and special damages, including presumed damages according to proof, in an amount to be proven at the time of trial, but not less than $1,000,000;
2. Punitive damages in an amount to be proven at the time of trial;
3. Costs of suit incurred;
4. An award of attorneys' fees in bringing this suit, to the extent permitted by substantive law; and

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
100 North City Parkway, Suite 1600
Las Vegas, Nevada 89106

5. Such further and other relief as this Court might deem just and proper.

**DEMAND FOR JURY TRIAL**

Mr. Petersen demands a trial by jury on all claims, as to all issues so triable.

DATED: February 4, 2026.

BROWNSTEIN HYATT FARBER SCHRECK, LLP

BY: */s/ Travis F. Chance*
TRAVIS F. CHANCE, ESQ.
tchance@bhfs.com
SEAN S. CUFF, ESQ.
scuff@bhfs.com

*Attorneys for Plaintiff Daniel Peterson*

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
100 North City Parkway, Suite 1600
Las Vegas, Nevada 89106