Russell J. Carr, Esq. (15191)
**Hutchison & Steffen, PLLC**
100 W. Liberty Street, Suite 765
Reno, Nevada 89501
Telephone: (775) 853-8746
rcarr@hutchlegal.com
*Attorney for Kelly Mills Evers*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| DANIEL PETERSEN,<br>*Plaintiff,*<br>vs.<br>KELLY MILLS EVERS,<br>*Defendant.* | Case No.: 3:26-cv-00094-ART-CSD<br><br>**ANSWER TO COMPLAINT FOR SLANDER AND COUNTERCLAIM** |
| KELLY MILLS EVERS,<br>*Counterclaimant,*<br>vs.<br>DANIEL PETERSEN,<br>*Counterdefendant.* | |

**ANSWER TO COMPLAINT FOR SLANDER AND COUNTERCLAIM**

Defendant and Counterclaimant Kelly Mills Evers ("Ms. Evers") files this Answer[1] and Counterclaim to the Complaint for Slander (the "Complaint") filed by Plaintiff and Counterdefendant Daniel Petersen ("Mr. Petersen") on February 4, 2026. *See* ECF No. 1.

[1] Ms. Evers filed a Special Motion to Dismiss Pursuant to NRS 41.660 and/or Fed. R. Civ. P. 12 (the "Motion to Dismiss") on March 5, 2026. *See* ECF No. 15. Mr. Petersen filed his Opposition on March 23, 2026. *See* ECF No. 23. Ms. Evers filed her Reply on April 9, 2026. *See* ECF No. 27. Thus, the Motion to Dismiss was filed before this responsive pleading and remains pending before the Court. Accordingly, Ms. Evers files this Answer and Counterclaim without withdrawing, abandoning, or otherwise waiving the arguments raised in her pending Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *See, e.g.*, *Brunig v. Clark*, 560 F.3d 292, 294 (5th Cir. 2009) ("Appellees filed their motion to dismiss before their answer[,] and they were not obligated to wait to answer until the court had ruled on the motion.").

**ANSWER TO COMPLAINT FOR SLANDER**

Ms. Evers files this Answer to the Complaint for Slander (the "Answer") filed by Mr. Petersen on February 4, 2026, *see* ECF No. 1, and alleges as follows:

INTRODUCTION

Mr. Petersen's introduction is not a short and plain statement of the claim. *See* Fed. R. Civ. P. 8(a). Thus, Ms. Evers is not obliged to provide an admission or denial. However, insofar as the introductory paragraph has factual allegations, Ms. Evers denies the same. Insofar as the introductory paragraph has legal conclusions, Ms. Evers denies the same.

PARTIES

1. Ms. Evers admits the allegations in Paragraph 1 of the Complaint.

2. Ms. Evers admits in part and denies in part the allegations in Paragraph 2 of the Complaint. Ms. Evers admits that she was a citizen of California on February 4, 2026. She has since updated her residency to Incline Village, Nevada, and therefore denies that she is still a citizen of California.

JURISDICTION AND VENUE

3. Ms. Evers admits in part and denies in part the allegations in Paragraph 3 of the Complaint. Ms. Evers admits that she was a citizen of California on February 4, 2026. She has since updated her residency to Incline Village, Nevada, and therefore denies that she is still a citizen of California. Ms. Evers admits the remaining allegations in Paragraph 3.

4. Ms. Evers admits in part and denies in part the allegations in Paragraph 4 of the Complaint. Ms. Evers admits that she is subject to personal jurisdiction in Nevada, that she owned real property in Coeur Du Lac Condominium Homeowners Association ("CDL"), and that Mr. Petersen was a resident of Washoe County at the time of this litigation. Ms. Evers denies the allegations that her conduct was wrongful, that she slandered Mr. Petersen, and that she caused harm to Mr. Petersen.

5. Ms. Evers admits the allegations in Paragraph 5 of the Complaint.

/ / /

/ / /

6. Ms. Evers admits in part and denies in part the allegations in Paragraph 6 of the Complaint. Ms. Evers admits that the action is properly assigned to the Northern Division. Ms. Evers denies that any "harm was felt."

GENERAL ALLEGATIONS

7. Ms. Evers admits in part and denies in part the allegations in Paragraph 7 of the Complaint. Ms. Evers denies that CDL is a "small" community but admits the remaining allegations in Paragraph 7.

8. Ms. Evers admits the allegations in Paragraph 8 of the Complaint.

9. Ms. Evers denies the allegations in Paragraph 9 of the Complaint.

10. Ms. Evers denies the allegations in Paragraph 10 of the Complaint.

11. Ms. Evers admits in part and denies in part the allegations in Paragraph 11 of the Complaint. Ms. Evers admits that American Family Insurance ("AFI") issued a non-renewal notice for CDL's insurance policy in the summer of 2024, effective October 31, 2024. Ms. Evers denies the remaining allegations in Paragraph 11.

12. Ms. Evers admits the allegations in Paragraph 12 of the Complaint.

13. Ms. Evers lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 13 of the Complaint and, on that basis, denies the same.

14. Ms. Evers lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 14 of the Complaint and, on that basis, denies the same.

15. Ms. Evers lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 15 of the Complaint and, on that basis, denies the same.

16. Ms. Evers lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 16 of the Complaint and, on that basis, denies the same.

17. Ms. Evers lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 17 of the Complaint and, on that basis, denies the same.

18. Ms. Evers lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 18 of the Complaint and, on that basis, denies the same.

19. Ms. Evers denies the allegations in Paragraph 19 of the Complaint.

20. Ms. Evers denies the allegations in Paragraph 20 of the Complaint.

21. Ms. Evers lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 21 of the Complaint and, on that basis, denies the same.

22. Ms. Evers admits in part and denies in part the allegations in Paragraph 22 of the Complaint. Ms. Evers admits that an insurance quote was obtained from Alliant Insurance Services. Ms. Evers denies that she, and not the CDL Board, obtained an insurance quote and further denies that Alliant Insurance Services was her "preferred insurance broker[s]."

23. Ms. Evers admits in part and denies in part the allegations in Paragraph 23 of the Complaint. Ms. Evers admits that she provided the Menath quote to Alliant. Ms. Evers denies that she submitted the Menath quote to Alliant "in order to obtain a revised Alliant quote."

24. Ms. Evers admits the allegations in Paragraph 24 of the Complaint.

25. Ms. Evers denies the allegations in Paragraph 25 of the Complaint.

26. Ms. Evers denies the allegations in Paragraph 26 of the Complaint.

27. Ms. Evers denies the allegations in Paragraph 27 of the Complaint.

28. Ms. Evers admits in part and denies in part the allegations in Paragraph 28 of the Complaint. Ms. Evers admits that Mr. Petersen sent multiple letters to Defendant and the rest of the Board. However, Mr. Petersen does not set forth the date of this letter in Paragraph 28. Ms. Evers denies any allegation that she mishandled any claim. Further, Ms. Evers denies any legal conclusion stated in Paragraph 28.

29. Ms. Evers admits in part and denies in part the allegations in Paragraph 29 of the Complaint. Ms. Evers admits that Mr. Petersen issued a letter on October 20, 2024. Ms. Evers denies that she had a lack of transparency, that any claim was not disclosed to homeowners, or that she used subpar efforts as the President of CDL. Further, Ms. Evers denies any legal conclusion stated in Paragraph 29.

30. Ms. Evers admits the allegations in Paragraph 30 of the Complaint, but denies any legal conclusion stated therein.

31. Ms. Evers admits the allegations in Paragraph 31 of the Complaint.

32. Ms. Evers denies the allegations in Paragraph 32 of the Complaint.

33. Ms. Evers admits in part and denies in part the allegations in Paragraph 33 of the Complaint. Ms. Evers admits that the text of NRS 686A.2815(1)(a) was set forth in the CDL Board Meeting on April 18, 2025. Ms. Evers denies that there was a PowerPoint slide or a "diatribe." Ms. Evers further denies any legal conclusions set forth in Paragraph 33.

34. Ms. Evers admits in part and denies in part the allegations in Paragraph 34 of the Complaint. Ms. Evers admits that the quoted language in Paragraph 33 is an accurate recitation of a portion of her statement in the CDL Board Meeting on April 28, 2025. Ms. Evers denies that she "cloaked herself with the authority of judge and jury." Ms. Evers denies any legal conclusions stated in Paragraph 34 of the Complaint.

35. Ms. Evers denies the allegations in Paragraph 35 of the Complaint. Insofar as Paragraph 35 states legal conclusions, Ms. Evers denies the same.

36. Ms. Evers admits in part and denies in part the allegations in Paragraph 36 of the Complaint. Ms. Evers admits that she discussed insurance and Mr. Petersen's failure to disclose aluminum wiring when he obtained insurance quotes. Ms. Evers denies the remaining allegations in Paragraph 36 of the Complaint. Insofar as Paragraph 36 states legal conclusions, Ms. Evers denies the same.

37. Ms. Evers admits in part and denies in part the allegations in Paragraph 37 of the Complaint. Ms. Evers admits that another Board member expressed discomfort over her speech. Ms. Evers denies the remaining allegations in Paragraph 37 of the Complaint. Insofar as Paragraph 37 states legal conclusions, Ms. Evers denies the same.

38. Ms. Evers denies the allegations in Paragraph 38 of the Complaint.

39. Ms. Evers admits in part and denies in part the allegations in Paragraph 39 of the Complaint. Ms. Evers admits that Ms. Petersen obtained loss-run reports from Menath. Ms. Evers denies that Mr. Petersen's sole role with Menath was obtaining loss-run reports and denies the remaining allegations in Paragraph 36 of the Complaint. Insofar as Paragraph 39 states legal conclusions, Ms. Evers denies the same.

40. Ms. Evers denies the allegations in Paragraph 40 of the Complaint.

41. Ms. Evers denies the allegations in Paragraph 41 of the Complaint.

FIRST CLAIM FOR RELIEF

(Slander Per Se)

42. Ms. Evers denies all allegations and all legal conclusions stated in Paragraph 42 of the Complaint.

43. Ms. Evers denies all allegations and all legal conclusions stated in Paragraph 43 of the Complaint.

44. Ms. Evers denies all allegations and all legal conclusions stated in Paragraph 44 of the Complaint.

45. Ms. Evers denies all allegations and all legal conclusions stated in Paragraph 45 of the Complaint.

46. Ms. Evers denies all allegations and all legal conclusions stated in Paragraph 46 of the Complaint.

47. Ms. Evers admits in part and denies in part the allegations in Paragraph 47. Ms. Evers admits that Mr. Petersen is not a public figure. She denies all remaining allegations and all legal conclusions stated in Paragraph 47 of the Complaint.

a. Ms. Evers denies all allegations and legal conclusions stated in Paragraph 47(a) of the Complaint.

b. Ms. Evers denies all allegations and legal conclusions stated in Paragraph 47(b) of the Complaint.

c. Ms. Evers denies all allegations and legal conclusions stated in Paragraph 47(c) of the Complaint.

d. Ms. Evers denies all allegations and legal conclusions stated in Paragraph 47(d) of the Complaint.

e. Ms. Evers denies all allegations and legal conclusions stated in Paragraph 47(e) of the Complaint.

48. Ms. Evers denies all allegations and all legal conclusions stated in Paragraph 48 of the Complaint.

/ / /

49. Ms. Evers denies all allegations and all legal conclusions stated in Paragraph 49 of the Complaint.

50. Ms. Evers denies all allegations and all legal conclusions stated in Paragraph 50 of the Complaint.

AFFIRMATIVE DEFENSES

1. The Complaint fails to state a claim upon which relief can be granted.

2. Mr. Petersen's defamation claim is barred because the allegedly defamatory statements were true and/or substantially true.

3. Mr. Petersen's defamation claim is barred because the allegedly defamatory statements were non-actionable statements of opinion, commentary, subjective judgment, that do not contain provably false assertions of fact.

4. Mr. Petersen's defamation claim is barred because the facts underlying the allegedly defamatory statements were true and/or substantially true.

5. Mr. Petersen's defamation claim is barred because the allegedly defamatory statement was an expression of subjective judgment that applied facts to law, and a reasonable person would understand that Mr. Petersen was not accused of the commission of a felony.

6. Mr. Petersen's defamation claim is barred because of the absolute litigation privilege.

7. Mr. Petersen's defamation claim is barred pursuant to Nevada's anti-SLAPP statutes.

8. Mr. Petersen's claims are barred or limited by the First Amendment to the United States Constitution because Ms. Evers exercised free speech.

9. Insofar as Mr. Petersen is required to establish actual malice, Ms. Evers did not publish or communicate any challenged statement with knowledge of its falsity or with reckless disregard for the truth.

10. Mr. Petersen's claims are barred because the challenged statements are not false statements of fact and therefore cannot support liability for defamation.

11. Mr. Petersen's claims are barred because Ms. Evers did not cause any damages.

12. Mr. Petersen's claims are barred because he did not suffer actual and legally cognizable damages because of any actionable statement or conduct attributable to Ms. Evers.

13. Mr. Petersen's claims are barred by the doctrine of estoppel because his own statements, representations, conduct, and/or omissions led to the allegedly defamatory statements.

14. Mr. Petersen's claims are barred because Ms. Evers had a statutory right to respond to Mr. Petersen's statements pursuant to NRS 116.31036 in the Board Meeting on April 18, 2025.

15. Mr. Petersen's claims are barred by the doctrine of unclean hands.

16. Mr. Petersen's claims are barred because any damages he suffered are offset by the damages he caused to Plaintiff.

17. Mr. Petersen's claim for punitive damages is barred because Ms. Evers did not act with malice, fraud, or oppression.

18. Mr. Petersen's claims for attorney fees are barred because there is no statute, contract, or rule of court that permits him to recover attorney fees.

19. Mr. Petersen's claims for costs of suit are barred because there is no statute, contract, or rule of court that permits him to recover costs.

20. Insofar as Ms. Evers has omitted any applicable affirmative defense from this Answer, she reserves the right to seek amendment of this pleading.

PRAYER

Ms. Evers prays for the following relief from this Court:

1. That Mr. Petersen recover no damages;

2. That Mr. Petersen recover no punitive damages;

3. That Mr. Petersen recover no costs of suit;

4. That Mr. Petersen recover no attorney fees; and

5. That Mr. Petersen receive no other form of relief from this Court.

**COUNTERCLAIM**

Ms. Evers files this Counterclaim (the "Counterclaim") to the Complaint for Slander filed by Mr. Petersen on February 4, 2026, *see* ECF No. 1, and alleges as follows:

/ / /

/ / /

/ / /

PARTIES

1. Mr. Petersen is a citizen of Idaho.

2. Ms. Evers was a citizen of California at the time this litigation commenced but is now a citizen of Nevada.

JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because Mr. Petersen and Ms. Evers are residents of separate states and the damages sought by Ms. Evers exceeds $75,000.00.

4. Mr. Petersen has filed the Complaint in this matter and therefore has consented to personal jurisdiction in Nevada.

5. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because the events and/or omissions giving rise to this Counterclaim occurred in Nevada.

6. This action is properly assigned to the Northern Division of the United States District Court for the District of Nevada as all events occurred in Washoe County. *See* LR IA 1-6.

GENERAL ALLEGATIONS

7. At all relevant times, Ms. Evers has worked in the Realty Profession and holds licensure with the Nevada Division of Real Estate as Credential No. S.0201309.

8. As a realtor, Ms. Evers is required to act as a fiduciary for buyers and sellers of real property pursuant to Nevada statute. *See* NRS 645.252. Among these duties, Ms. Evers is required to exercise reasonable care and diligence, disclose all material and relevant facts, and exercise reasonable skill and care with respect to all parties to the transaction. *Id.*

9. Coeur Du Lac Condominium Homeowners Association ("CDL") is a common-interest community located in Incline Village, Nevada.

10. Mr. Petersen and his spouse, Sharon Petersen ("Mrs. Petersen") maintained a residence at CDL from approximately 2019 to 2025.

11. Ms. Evers, through her Trust, owned a unit in CDL at all relevant times.

12. In January 2023, the CDL Board consisted of Rob Penrose, Kim Lighthart, Eric Nielsen, Mark Dougan, and Mrs. Petersen.

13. In April 2023, Ms. Evers organized a recall petition against Mrs. Petersen relating to overbearing parking rules that negatively impacted owners' ability to rent their units as short-term rentals.

14. On April 26, 2023, Ms. Evers served the Petition for Removal under Article II, Section 2.02(d) of CDL's Bylaws. Following a community vote, Mrs. Petersen and others were removed from the CDL Board on July 21, 2023.

15. Following the removal of Mrs. Petersen from the CDL Board, Ms. Evers was appointed as the President in July 2023 and served in that role until she resigned in April 2025.

16. Upon information and belief, Mrs. Petersen and Mr. Petersen were enraged that Ms. Evers successfully removed Mrs. Petersen from the CDL Board and thereafter engaged in a retaliatory campaign to defame, belittle, and harass Ms. Evers in the eyes of CDL homeowners.

17. On or about July 26, 2023, the Owner in Unit 25 encountered damage to the water line that fed into his refrigerator, causing water leaks. This damage caused the lower Owner in Unit 24 to suffer water damage in their unit. For the purposes of the remainder of the Counterclaim, this incident is referred to as the "Water Damage Incident."

18. On or about September 5, 2023, Brett Charbonneau with American Family Insurance wrote to Incline Property Management ("IPM") that someone opened a claim for water loss on CDL's Master policy on or about September 2, 2023. This claim was based on the Water Damage Incident. Ms. Evers immediately responded to Mr. Charbonneau and asked who opened the claim, the content of the claim, and for all information regarding the claim. Prior to this time, Ms. Evers was not aware that a claim had been submitted to American Family Insurance on CDL's Master policy relating to the Water Damage Incident.

19. On September 5, 2023, Ms. Evers wrote an email to Brett Charbonneau with American Family Insurance asking him "WHO made this claim? The documents fail to identify the name of the person that made the claim this weekend." Ultimately, the CDL Board learned that the Lower Unit 24 Owners had been advised by their HO-6 insurer to submit the claim on the HOA's Master insurance policy which covered only a portion of the property to "As-Built" specifications. The Lower Unit 24 Owners' HO-6 policy generally covered their personal property, loss of use, and

portions of the unit or improvements not covered by the HOA's Master insurance policy.

20. On September 6, 2023, Brett Charbonneau with American Family Insurance wrote an email to Ms. Evers and former CDL Board member and insurance agent, Mike Dwyer, informing them that the HOA Master policy provided coverage for a portion of the interior damage due to the Water Damage Incident. Thus, Brett Charbonneau made clear that this claim was appropriately placed on CDL's Master insurance policy.

21. On September 8, 2023, Emily Fralick with Incline Property Management and Ms. Evers reached out to Loretta Lam, an AFICS subrogation specialist, to discuss the claim arising from the Water Damage Incident. Ms. Evers also sought to ascertain whether the claim was appropriately placed on CDL's Master insurance policy. Ms. Lam represented to Ms. Evers and Emily Fralick that the claim was a covered event and it was properly made on CDL's Master insurance policy.

22. A CDL Board Meeting was held on September 23, 2023, and the Agenda for that meeting was sent to all CDL homeowners. On the Agenda under the category of "New Business" it stated, "Discussion of Insurance Claim." At that Board Meeting, Mrs. Evers reported to the CDL community that HOA's Master insurance policy was responsible for a portion of the interior items and that American Family Insurance indicated that the claim arising from the Water Damage Incident was appropriately placed on CDL's insurance policy. The minutes memorialize Evers' report that a homeowner had submitted a claim involving severe water damage; that the damage resulted from a faulty refrigerator water line in an upper unit leaking into the lower unit; the circumstances under which the matter reached CDL's insurer; the insurer's coverage position; and the applicable deductible. The minutes further memorialize discussion concerning the handling of future insurance claims and directing management to provide insurance information to homeowners and arrange for CDL's insurer to speak to homeowners. Thus, the water-damage claim was investigated, placed on the agenda of an open Board meeting noticed to all homeowners, publicly discussed at that meeting and fully disclosed to all CDL Homeowners.

23. Ultimately, American Family Insurance paid approximately $75,000.00 to remediate and fix the Water Damage Incident.

24. In the summer of 2024, American Family Insurance notified CDL that it would not renew CDL's insurance coverage. American Family Insurance notified CDL that coverage would cease on October 31, 2024. For the remainder of the Complaint, these facts are referred to as the "CDL Insurance Cancellation."

25. Upon information and belief, American Family Insurance's decision on the CDL Insurance Cancellation was due to fire risk in the Lake Tahoe Basin. To wit:

a. At a March 17, 2024, North Lake Tahoe Fire Protection District meeting, a local insurance broker reported that only one carrier (out of 26) was interested in writing a policy due to wildfire risk.

b. On June 26, 2024, the San Francisco Chronical described the situation as a home-insurance crisis spreading into Nevada and Tahoe.

c. On June 23, 2024, the Nevada Division of Insurance scheduled a public town hall in Incline Village, Nevada, to address wildfire impacts on homeowners and condominium insurance. The Division noted that wildfire activity had caused higher homeowner insurance rates and challenges to insurance companies when issuing insurance policies in certain areas including the Tahoe Basin.

d. On July 31, 2024, Insurance Commissioner Scott Kipper testified at the Nevada Legislature that western wildfires were causing insurers to reduce their exposure in Nevada. In this testimony, he noted that approximately 4,892 homeowners suffered nonrenewal due to wildfire risk. He added that many of the affected properties were in the Lake Tahoe Basin.

26. Following the successful efforts to remove Mrs. Petersen from the CDL Board, Mr. Petersen decided to use the Water Damage Incident, along with the CDL Insurance Cancellation, to engage in a retaliatory campaign to defame, belittle, and harass Ms. Evers in the eyes of CDL homeowners.

27. Indeed, between September 17, 2024, and February 25, 2025—as alleged below—Mr. Petersen engaged in a pervasive, repetitive, and robust writing campaign against Ms. Evers to third parties, including Vickie Rose, Trent Block, Larry Payne, Mary Papagiannis, Rob Penrose,

Chia Rowan, Eric Nielsen, Valerie Meldner, Melissa Hooven, Steve Stanovcak, and all other CDL Homeowners who received his communications during these relevant times. In this campaign, Mr. Petersen published a plethora of defamatory statements against Ms. Evers accusing her of **fraud, placing gag orders over CDL matters, concealing material information from CDL Homeowners, improperly submitting insurance claims to CDL's policy, submitting insurance claims without due diligence, covering up insurance claims, violations of her fiduciary duties, causing insurance premiums to increase for all CDL Homeowners, failing to notify CDL Homeowners of the Water Damage Incident, and of blocking insurance markets.**

28. Mr. Petersen assumed the role of a self-appointed overseer of the CDL Board, repeatedly second-guessing and challenging decisions made by the duly elected Board, substituting his personal judgment for that of the Board, and publicly portraying Board decisions with which he disagreed as evidence of wrongdoing, misconduct, incompetence, dishonesty, or breaches of fiduciary duty by Ms. Evers. Mr. Petersen's conduct was persistent rather than occasional. Over a period of months, he repeatedly disseminated written accusations concerning Ms. Evers to CDL homeowners and other third parties, frequently repeating and escalating the same accusations concerning the Water Damage Incident and CDL's insurance even after receiving information that contradicted those accusations. In his communications, Mr. Petersen repeatedly presented his own conclusions concerning insurance coverage, claims handling, Board governance, and other Association matters as superior to the determinations made by the Board and the insurance and other professionals upon whom the Board relied. Mr. Petersen used this continuing stream of communications as a vehicle to publish false and defamatory accusations concerning Ms. Evers and to discredit her honesty, competence, judgment, integrity, and fitness to serve as President of the CDL Board in the eyes of CDL homeowners.

Defamatory Statements on September 11, 2024

29. On September 11, 2024, Mr. Petersen published a written communication to CDL homeowners regarding the Water Damage Incident, the CDL insurance policy, and other issues. In this written communication, Mr. Petersen stated, "**Mrs. Evers approved to submit a claim against our HOA Insurance policy** for a water leak inside of Unit 25, that caused severe water damage to

the ceiling of Unit 24, the water leak was caused by a kinked refrigerator water dispenser line in Unit 25."

30. This communication was false because Ms. Evers never approved any claim on the CDL insurance policy, was told by Brett Charbonneau on September 6, 2023, that this claim was properly placed on CDL's insurance policy, and was told by Loretta Lam on September 8, 2023, that this claim was properly placed on CDL's insurance policy.

31. Mr. Petersen testified in a deposition that he has no evidence to show that Ms. Evers expressly allowed the claim to be placed on CDL's insurance policy. Thus, Mr. Petersen acted with a reckless disregard of the truth.

32. In the same written communication published by Mr. Petersen on September 11, 2024, Mr. Petersen stated, with respect to the Clubhouse Pool and Spa, that "Mrs. Evers has always claimed she was for open communication and transparency; however, it appears she has **put a gag order on an incident**."

33. This communication was false because Ms. Evers never placed any gag order on any CDL Board matters or instructed anyone not to discuss any matters.

34. Upon information and belief, no evidence exists to show that Ms. Evers placed a gag order on any Board Matters, and therefore Mr. Petersen acted with a reckless disregard of the truth.

<u>Defamatory Statement on September 17, 2024</u>

35. On September 17, 2024, Mr. Petersen published a written communication to Emily Fralick stating that, "Mrs. Evers' daughter was appointed to opening and counting the ballots and this was apparently acceptable to IPM with the knowledge that Mrs. Evers was the interim President. This decision was both ethically problematic and raises potential **fraud concerns** and to this day presents questions of legality of the results of the last election." This false statement of fact was repeated to the Nevada Division of Real Estate.

36. This statement was false because neither Ms. Evers, nor her daughter, committed any fraud in the counting of CDL election ballots.

37. Upon information and belief, no evidence exists to show that Ms. Evers engaged in election fraud, and therefore Mr. Petersen acted with a reckless disregard of the truth.

Defamatory Statements on October 20, 2024

38. On October 20, 2024, Mr. Petersen published a written communication to CDL homeowners regarding the Water Damage Incident stating an "**insurance claim was approved by Evers with no due diligence**."

39. In the same written communication published by Mr. Petersen on October 20, 2024, he referenced the Water Damage Incident and stated, "**Mrs. Evers has failed in her fiduciary duty** by allowing the Association to take full liability of the Unit 25 Claim."

40. In the same written communication published by Mr. Petersen on October 20, 2024, he referenced the Water Damage Incident and stated, "Mrs. Evers should have investigated the potential claim **before making the Association responsible for the damage** caused by a water leak that originated from Unit 25's refrigerator supply line."

41. In the same written communication published by Mr. Petersen on October 20, 2024, he referenced the Water Damage Incident and stated, "it was **concealed and the impact of the claim was camouflaged** as solely attributed to 'wildfire risk.'" Mr. Petersen added, "This is also the reason Mrs. Evers took the lead on securing the Insurance . . . all in order to **continue to cover up the gross incompetence** of handling this incident back on or even after July 26, 2023[.]"

42. The statements in Paragraphs 38-41 were false, as Ms. Evers worked on September 6 and 8, 2023, to specifically speak with American Family Insurance to ascertain whether the claim was validly placed on CDL's policy. American Family Insurance represented to Ms. Evers that the claim was properly placed on CDL's policy.

43. These statements were also false as a matter of law pursuant to NRS 116.31133, as CDL's insurance policy could not subrogate against the Upper Unit 25 Owner 's insurance for the damage that was caused to the Lower Unit 24 Owner's unit. In other words, CDL could not recover damages from the Upper Unit 25 Owner's insurance.

44. At a CDL Board Meeting on September 23, 2023, Ms. Evers reported to the CDL community that HOA's Master insurance policy was responsible for a portion of the interior items and that American Family Insurance indicated that the claim arising from the Water Damage Incident was appropriately placed on CDL's insurance policy. Thus, at the time Mr. Petersen made

his statements on October 20, 2024, he knew that Ms. Evers performed due diligence and still intentionally misrepresented the truth.

45. On September 17, 2024, AFICS, Inc., on behalf of American Family Insurance, sent an email to Mr. Petersen telling him that insurance companies waive their right to subrogation for claims involving a condominium association unit owner pursuant to NRS 116.31133. Thus, when Mr. Petersen made his statements on October 20, 2024, he knew that Mrs. Evers did not make CDL responsible for the claim because Nevada law required the claim to be placed on CDL's policy.

46. A letter dated September 20, 2024, from Homesite Indemnity Company informed Mr. Petersen that the Upper Unit 25 Owner 's insurance was not responsible for any damage. Thus, Homesite determined that the claim from the Water Damage Incident was properly placed on CDL's Master insurance policy. Thus, when Mr. Petersen made his statements on October 20, 2024, he knew that Mrs. Evers did not make CDL responsible for the claim because he knew that the unit owner's insurance would not cover the claim.

<u>Defamatory Statements on November 7, 2024</u>

47. On November 7, 2024, Mr. Petersen published a written communication to CDL homeowners regarding the Water Damage Incident stating, "[**t**]**his incident was concealed from the Owners and the water claim impact to the premium was camouflaged as solely attributed to the Wildfire risk in every communication from Mrs. Evers**."

48. In the same written communication published by Mr. Petersen on November 7, 2024, he alleged, with respect to the Water Damage Incident, that "[a]ll of **the Owners were never notified of this incident** in any of the subsequent Board meetings or any communications to the owners."

49. This statement is false, as Ms. Evers did notify all owners of the Water Damage Incident.

50. At a CDL Board Meeting on September 23, 2023, Ms. Evers reported to the CDL community that HOA's Master insurance policy was responsible for the interior items and that American Family Insurance indicated that the claim arising from the Water Damage Incident was appropriately placed on CDL's Master insurance policy. Thus, at the time Mr. Petersen made his

statements on November 7, 2024, he knew that Ms. Evers disclosed the claim to homeowners and still intentionally made a misrepresentation of fact and recklessly disregarded the truth.

Defamatory Statements on December 16, 2024

51. In a written communication on December 16, 2024, Mr. Petersen wrote in an email to Steve Stanovcak, with respect to the Water Damage Incident, that Mrs. Evers “brushed [it] aside, mishandled [it], and now has costed [sic] [a]ll of us Owners exorbitant insurance premiums, outrageous deductibles, and a $97K aluminum wiring remediation assessment.”

52. This statement is false, as a matter of law, because NRS 116.31133 provides that, “[t]he insurer waives its right to subrogation under the policy against any unit’s owner or member of his or her household.” Thus, as a matter of law, CDL could not subrogate against the Unit Owner.

53. This statement is also false, as Ms. Evers did not cause increases in any premiums.

54. On September 17, 2024, AFICS, Inc., on behalf of American Family Insurance, sent an email to Mr. Petersen telling him that insurance companies waive their right to subrogation for claims involving a condominium association unit owner pursuant to NRS 116.31133. Thus, when Mr. Petersen made his statements on December 16, 2024, he knew that Mrs. Evers did not make CDL responsible for the claim because Nevada law required the claim to be placed on CDL’s Master policy. Thus, he knew that Ms. Evers did not cause the insurance premiums to increase as the claim was properly placed on CDL’s Master policy. Nonetheless, Mr. Petersen still intentionally made a misrepresentation of fact and recklessly disregarded the truth.

55. A letter dated September 20, 2024, from Homesite Indemnity Company informed Mr. Petersen that the Upper Unit 25 Owner ’s insurance was not responsible for any damage. Thus, Homesite determined that the claim from the Water Damage Incident was properly placed on CDL’s Master insurance policy. Thus, when Mr. Petersen made his statements on December 16, 2024, he knew that Mrs. Evers did not make CDL responsible for increased premiums as the claim was properly placed on CDL’s policy. Nonetheless, Mr. Petersen still intentionally made a misrepresentation of fact and recklessly disregarded the truth.

56. In a separate written communication on December 16, 2024, Mr. Petersen wrote to CDL Homeowners that insurance premiums increased because of the Water Damage Incident. On

the same day, Mary Papagiannis wrote back to Mr. Petersen that, "this seems on the verge of criminal." This correspondence reflects that other CDL Homeowners interpreted Mr. Petersen's communications to raise substantial concerns that Ms. Evers was engaged in criminal conduct.

Defamatory Statements on December 17, 2024

57. In a written communication on December 17, 2024, Mr. Petersen wrote to Rob Penrose that, "I think it's time to launch your letter to the Owners about the electric scam. Just keep hitting her from every angle to get Owners to ban together and oust her. So, then we can go back to Menath at the end of January, to get a more reasonable insurance policy without pushback from **her** and Alliant **blocking the market again.**"

58. This statement is false, as Ms. Evers never blocked any insurance markets.

59. Upon information and belief, no evidence exists to show that Ms. Evers engaged in blocking insurance markets, and therefore Mr. Petersen acted with a reckless disregard of the truth.

Defamatory Statements on December 21, 2024

60. In a written communication on December 21, 2024, Mr. Petersen wrote to Rob Penrose that, "Need to send your letter to explain the **electrical scam** while the iron is hot."

61. This communication referenced Ms. Evers.

62. This statement is false, as Ms. Evers never engaged in an electrical scam.

63. Upon information and belief, no evidence exists to show that Ms. Evers engaged in an electrical scam, and therefore Mr. Petersen acted with a reckless disregard of the truth.

Defamatory Statements on January 21, 2025

64. In an email to Vickie Rose on January 21, 2025, Mr. Petersen wrote, with respect to the Water Damage Claim, that, "**Mrs. Evers has failed in her fiduciary duty by allowing the Association to take full liability of this claim against our insurance**, that was clearly the gross negligence on Royal's part."

65. In the same written communication, Mr. Petersen wrote, "this is not merely should of, would of, could of as you phrased it, this is a serious breach of fiduciary duty that should not just be brushed off, there are owners on strict monthly budgets and cannot **endure the financial impact that this misstep by Mrs. Evers has caused**."

66. These statements were false, as Ms. Evers properly investigated the claim and was advised by American Family Insurance that the claim was properly placed on CDL's policy. Resultantly, Ms. Evers did not cause any financial detriment or impact on CDL Homeowners.

67. On September 17, 2024, AFICS, Inc., on behalf of American Family Insurance, sent an email to Mr. Petersen telling him that insurance companies waive their right to subrogation for claims involving a condominium association unit owner pursuant to NRS 116.31133. Thus, when Mr. Petersen made his statements on January 21, 2025, he knew that Mrs. Evers did not make CDL responsible for the claim because Nevada law required the claim to be placed on CDL's policy. Thus, he knew that Ms. Evers did not cause the insurance premiums to increase as the claim was properly placed on CDL's policy. Nonetheless, Mr. Petersen still intentionally made a misrepresentation of fact and recklessly disregarded the truth.

68. A letter dated September 20, 2024, from Homesite Indemnity Company informed Mr. Petersen that the Upper Unit 25 Owner 's insurance was not responsible for any damage. Thus, Homesite determined that the claim from the Water Damage Incident was properly placed on CDL's Master insurance policy. Thus, when Mr. Petersen made his statements on January 21, 2025, he knew that Mrs. Evers did not make CDL responsible for increased premiums as the claim was properly placed on CDL's policy. Nonetheless, Mr. Petersen still intentionally made a misrepresentation of fact and recklessly disregarded the truth.

Defamatory Statements on February 25, 2025

69. In a written communication to Trent Block, Larry Payne, Mary Papagiannis, Rob Penrose, Chia Rowan, Eric Nielsen, Valerie Meldner, and Melissa Hooven on February 25, 2025, Mr. Petersen wrote that Mrs. Evers, "**[a]llowed the previous owner of Unit 25 to submit a water damage claim against the HOA's insurance American Family for $75K**."

70. This claim is false, as Ms. Evers never allowed any person to submit any claim on CDL's insurance policy relating to the Water Damage Incident.

71. On September 17, 2024, AFICS, Inc., on behalf of American Family Insurance, sent an email to Mr. Petersen telling him that insurance companies waive their right to subrogation for claims involving a condominium association unit owner pursuant to NRS 116.31133. Thus, when

Mr. Petersen made his statements on February 25, 2025, he knew that Mrs. Evers did not make CDL responsible for the claim because Nevada law required the claim to be placed on CDL's policy. Thus, he knew that Ms. Evers did not cause the insurance premiums to increase as the claim was properly placed on CDL's policy. Nonetheless, Mr. Petersen still intentionally made a misrepresentation of fact and recklessly disregarded the truth.

72. A letter dated September 20, 2024, from Homesite Indemnity Company informed Mr. Petersen that the Upper Unit 25 Owner 's insurance was not responsible for any damage. Thus, Homesite determined that the claim from the Water Damage Incident was properly placed on CDL's Master insurance policy. Thus, when Mr. Petersen made his statements on February 25, 2025, he knew that Mrs. Evers did not make CDL responsible for increased premiums as the claim was properly placed on CDL's policy. Nonetheless, Mr. Petersen still intentionally made a misrepresentation of fact and recklessly disregarded the truth.

73. In the same written correspondence, Mr. Petersen wrote, with respect to the Water Damage Incident, that "**[i]t is a lack of transparency that this water damage was never even brought up to all of the Owners at a Board Meeting or any correspondence sent notifying all Owners, especially considering it created a claim on our HOA insurance**."

74. This statement is false, as Ms. Evers did inform the Unit Owners of the claim.

75. At a CDL Board Meeting on September 23, 2023, Ms. Evers reported to the CDL community that HOA's insurance policy was responsible for the interior items and that American Family Insurance indicated that the claim arising from the Water Damage Incident was appropriately placed on CDL's insurance policy. Thus, at the time Mr. Petersen made his statements on February 25, 2025, he knew that Ms. Evers disclosed the claim to homeowners and still intentionally made a misrepresentation of fact and recklessly disregarded the truth. Further, Mr. Petersen testified in his deposition that he learned of the Water Damage Incident at the September 2023 Board Meeting and that the water insurance was discussed.

76. Despite this repetitive campaign, Ms. Evers worked diligently and in good faith to try to obtain coverage for CDL through Alliant Insurance Services. Through these efforts, Ms.

/ / /

Evers and the CDL Board successfully retained alternative coverage for CDL despite the crisis they confronted.

77. Ms. Evers asserts this Counterclaim to recover damages that she has suffered as a result of Mr. Petersen's relentless campaign to harass and defame her in the eyes of CDL homeowners.

FIRST CLAIM FOR RELIEF

(Defamation Per Se)

78. Ms. Evers repeats and realleges all previous paragraphs of this Counterclaim and incorporates them by references if set forth fully herein.

79. Mr. Petersen communicated false and defamatory statements about Ms. Evers to third parties as detailed in Paragraphs 29, 32, 35, 38, 39, 40, 41, 42, 48, 51, 56, 57, 60, 64, 65, 69, and 73. Each of these Paragraphs is incorporated into this allegation by reference as if set forth fully herein.

80. The communications listed in Paragraph 50 were false for the reasons stated in Paragraphs 30, 33, 36, 42, 43, 49, 52, 53, 58, 62, 66, 70, and 74. Each of these Paragraphs is incorporated into this allegation by reference as if set forth fully herein.

81. Mr. Petersen knew his communications were false and/or acted in reckless disregard of the truth of these matters for the reasons stated in Paragraphs 31, 34, 37, 44, 45, 46, 50, 54, 55, 56, 63, 67, 68, 71, 72, and 75. Each of these Paragraphs is incorporated into this allegation by reference as if set forth fully herein.

82. The false and defamatory statements that Mr. Petersen made about Ms. Evers to third parties suggest that Ms. Evers lacks fitness for her business and profession and/or injures her trade, business, and profession because—as a realtor—Ms. Evers is required to exercise reasonable care and diligence, disclose all material and relevant facts, and exercise reasonable skill and care with respect to all parties to the transaction. Ms. Evers volunteered to join the Board to meet the CDL community and the broader Incline Village Community. She often stayed at her CDL Unit. At all relevant times, Ms. Evers acted as a realtor in Nevada and California, and was seeking to build her book of business in Nevada. Because business is established based on reputation, Mr. Petersen's

false and disparaging remarks to the CDL Community harmed Ms. Evers's reputation and therefore her opportunities to gain business through her good name.

83. Damages are presumed because Mr. Petersen's statements suggested her lack of fitness as a fiduciary, which is a keystone of her profession, trade, and occupation.

84. Ms. Evers is entitled to recover damages in an amount exceeding $75,000.00.

85. Ms. Evers is entitled to recover attorney fees pursuant to NRS 18.010(2)(b).

86. Ms. Evers is entitled to recover costs pursuant to NRS 18.020.

87. Mr. Petersen made the statements in Paragraphs with the intent to injure Ms. Evers.

88. Ms. Evers is entitled to recover punitive damages pursuant to NRS 42.005.

## PRAYER

Ms. Evers prays for the following relief from this Court:

1. That she recover compensatory damages in an amount to be proven at the time of trial, in an amount exceeding $75,000.00;

2. That she recover punitive damages pursuant to NRS 42.005.

3. That she recover reasonable costs of suit pursuant to NRS 18.020;

4. That she recover reasonable attorney fees pursuant to NRS 18.010(2)(b); and

5. For any further relief that this Court deems is just and proper.

## **AFFIRMATION**

The undersigned hereby affirms that the foregoing pleading does not contain the Social Security number or personal information of any person.

Dated: September 9, 2026.

HUTCHISON & STEFFEN, PLLC
*/s/ Russell J. Carr*
Russell J. Carr, Esq. (15191)
100 W. Liberty Street, Suite 765
Reno, Nevada 89501
Telephone: (775) 853-8746
rcarr@hutchlegal.com
*Attorney for Kelly Mills Evers*

**CERTIFICATE OF SERVICE**

Pursuant to Fed. R. Civ. P. 5(b), I certify that I am an employee of Hutchison & Steffen, PLLC, and that on this date I caused to be served a true copy of the attached **ANSWER TO COMPLAINT FOR SLANDER AND COUNTERCLAIM** on all parties to this action by the method(s) indicated below:

☒ by email addressed to:

Travis F. Chance, Esq. (13800)
Sean S. Cuff, Esq. (Pro Hac Vice)
BROWNSTEIN HYATT FARBER SCHRECK, LLP
tchance@bhfs.com
scuff@bhfs.com

☐ by placing an original or true copy thereof in a sealed envelope, with sufficient postage affixed thereto, in the United States mail at Reno, Nevada, addressed to:

☒ by using the Court's electronic notification system by submitting the foregoing to the United States District Court for the District of Nevada's ECF-filing System for Electronic Service upon the Court's Service List pursuant to Rule 26(a)(1). The copy of the document electronically served bears a notation of the date and time of service.

Dated: September 9, 2026.

*/s/ Hailey Teeter*
Employee of Hutchison & Steffen, PLLC