Russell J. Carr, Esq. (15191)
**HUTCHISON & STEFFEN, PLLC**
100 W. Liberty Street, Suite 765
Reno, Nevada 89501
Telephone: (775) 853-8746
rcarr@hutchlegal.com

*Attorney for Kelly Mills Evers*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| DANIEL PETERSEN,<br>*Plaintiff*,<br>vs.<br>KELLY MILLS EVERS,<br>*Defendant*. | Case No.: 3:26-cv-00094-ART-CSD<br><br>**DEFENDANT'S OPPOSITION TO PLAINTIFF'S COUNTERMOTION FOR LEAVE TO AMEND** |
| KELLY MILLS EVERS,<br>*Counterclaimant*,<br>vs.<br>DANIEL PETERSEN,<br>*Counterdefendant*. | (Pursuant to LR 7-2(b), Defendant filed her Reply to Mr. Petersen's Motion to Strike Separately on November 13, 2026) |

Defendant and Counterclaimant Kelly Mills Evers ("Ms. Evers" or "Defendant") respectfully files this Opposition to the Countermotion for Leave to Amend that was filed by Plaintiff and Counterdefendant Daniel Petersen ("Mr. Petersen" or "Plaintiff") on November 6, 2026. Plaintiff filed his First Amended Complaint without leave of Court or without consent of counsel as required by Rule 15(a)(2). He moved for leave to amend on November 6, 2026. Pursuant to LR 7-3(b), this Opposition is less than 24 pages. This Opposition is based upon the attached Memorandum of Points and Authorities, the attached exhibits, and all papers and pleadings on file. For the reasons stated herein, this Court should *deny* the Motion for Leave to Amend on the ground that the amendment is futile.

**I. <u>Introduction:</u>**

Incline Village, Nevada, is a tranquil and serene town on the north shore of Lake Tahoe. Nestled within the pine trees less than a quarter mile off the blue waters of Lake Tahoe, the Coeur Du Lac Homeowners' Association ("CDL") contains 58 units that were built in 1974. Despite the natural beauty that surrounds the property, intense disputes within CDL require this Court to reject a defamation claim and reaffirm the central purpose of the Free Speech Clause, which is "to protect the freedom to think as you will and to speak as you think." *303 Creative, LLC v. Elenis*, 600 U.S. 570, 143 S. Ct. 2298, 230-04 (2023) (internal quotation marks omitted). This case is about upholding Ms. Evers' Free Speech—her right to think, her right to speak, and her right to participate in a matter of public concern, *i.e.*, her "inalienable rights." *See id.*, 143 S. Ct. at 2304.

Ms. Evers served as the President of the Board at CDL. Mr. Petersen, who was a homeowner and *not* on the CDL Board, sent a plethora of written letters and emails to fellow homeowners criticizing Ms. Evers in her role as President, asserting materially false allegations against her, and challenging her decisions. Mr. Petersen predominantly took umbrage with how Ms. Evers handled insurance; he claimed, without factual support, that she caused CDL to suffer higher premiums and deductibles. Thus, without Board Authority, he sought to obtain competing insurance quotes for CDL. Ms. Evers correctly pointed out that Mr. Petersen lacked authority to obtain quotes on behalf of the Board. Nonetheless, Mr. Petersen proceeded with obtaining multiple quotes for CDL through Menath Insurance ("Menath"). In doing so, Mr. Petersen did not tell Menath that he was not on the CDL Board, and he did not disclose that CDL's subpanels contained aluminum wiring, which was a material fire risk to insurance carriers. After Mr. Petersen obtained his quotes, Menath later revoked its quote because the aluminum wiring had not been disclosed.

After months of communications on this topic, Mr. Petersen sent a letter to urge his fellow homeowners to recall Ms. Evers from the Board. This letter criticized Ms. Evers for how she handled insurance. Pursuant to NRS 116.31063(2)(a)(3)—and the Free Speech Clause—Ms. Evers agendized her response and addressed Mr. Petersen's allegations at a CDL Board Meeting on April 18, 2025. Her response, which addressed Mr. Petersen's allegations of impropriety, led to Mr. Petersen's claim for defamation, which seeks to chill Ms. Evers' Free Speech.

As alleged by Plaintiff, on April 18, 2025, Ms. Evers displayed the text of NRS 686A.2815(1)(a) during the CDL Board Meeting. This statute states as follows:

> 1. "Insurance fraud" means knowingly and willfully: (a) Presenting or causing to be presented any statement to an insurer, a reinsurer, a producer, a broker or any agent thereof, if the person who presents or causes the presentation of the statement knows that the statement conceals or omits facts, or contains false and misleading information concerning any fact material to an application for the issuance of a policy of insurance.

*See* ECF No. 1, at 7. In conjunction with the presentation of the text of the statute, Ms. Evers stated,

> [Mr.] Petersen's intentional ***omission*** of the material facts to the Menath agent (a) that we had aluminum wiring in the subpanels that he didn't disclose and/or (b) that he was not acting on behalf of the board, in my opinion, ***constitutes*** insurance fraud.
>
> In making applications, the applicant has to perform due diligence and disclose all relevant material facts to the insurer. He did not.
>
> **This is huge—had the board relied on Petersen's false quote and later suffered a loss, say a fire, the impact to our community would have been disastrous**. Every insurance claim made under the HOA master policy would have been denied. The insurance company would have returned our premium, leaving CDL uninsured and devastated. This would have been a catastrophic uncovered loss and each of us would end up with less than $2000 to rebuild a complex that is valued in the range of $25 million under the master policy. Let that sink in for a moment.

*See* ECF No. 1, at 7 (emphases added). Ms. Evers did *not* say that Mr. Petersen was convicted of a crime. She did *not* say that he was charged with a crime. She did *not* say that he was being investigated for a crime. She did *not* say that he committed a crime. Instead, Ms. Evers said that Mr. Petersen's omissions from the insurance quote, based on her reading of the statute, constituted insurance fraud. Then, Ms. Evers gave context to her opinion—she specifically mentioned that, had the CDL Board relied on the quote Petersen obtained and suffered a loss, the impact on the CDL community would have been disastrous because every insurance claim would have been denied. Ms. Evers asserted a reasonable, common-sense, and straightforward proposition, *i.e.*, if an insurer discovers that a quote did not disclose material information, the insurer may not cover loss. Ms.

Evers' proposition—that an insurer can deny CDL coverage based on undisclosed material terms—is supported by Nevada statute. *See* NRS 687B.110. And, importantly, discovery has shown that Mr. Petersen did *not* disclose the aluminum wiring to Menath and did *not* tell the agents that he was not acting on behalf of the CDL Board. Thus, Ms. Evers told the ***truth.***

The Ninth Circuit has endorsed the principle that a layperson's interpretation of a statute is a protected opinion that is protected by the First Amendment. Indeed, the Ninth Circuit has stated, "'[a]bsent a clear and unambiguous ruling from a court or agency of competent jurisdiction, statements by laypersons that purport to interpret the meaning of a statute . . . are opinion statements, and not statements of fact.'" *Rodriguez v. Panayiotou*, 314 F.3d 979, 986 (9th Cir. 2002) (quoting *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 731-32 (9th Cir. 1999)). Ms. Evers interpreted NRS 686A.2815(1)(a), applied truthful facts, and stated that it was her opinion that Mr. Petersen's material omissions would *constitute* insurance fraud that would allow an insurer to deny coverage *if* CDL suffered loss. This was a protected opinion under the First Amendment.

When discovery revealed that Ms. Evers told the truth, Plaintiff decided to raise a new theory for relief by adding a second allegation of defamation. *See* ECF No. 44. The First Amended Complaint seeks to hold Ms. Evers liable for more protected speech while she was acting as the CDL Board President. Indeed, the First Amended Complaint alleges that the following email that Ms. Evers sent to American Family Insurance, about Mr. Petersen, constitutes defamation:

> It is my understanding that in Nevada, misrepresenting yourself as a member of a homeowners' association (HOA) board to obtain information under false pretenses could be illegal. Specifically, this type of behavior may fall under fraud or identity misrepresentation depending on the details, particularly if it was done to gain confidential information. Nevada Revised Statutes (NRS) include laws against fraud and misrepresentation, which could apply here, particularly under NRS 205.377 for 'obtaining information under false pretenses.'

ECF No. 44, at 11.

As the First Amended Complaint alleges, Ms. Evers sent this email on October 21, 2024, and asked American Family Insurance to investigate whether Mr. Petersen had loss-run reports from American Family Insurance on behalf of the CDL Board under false pretenses. *Id.* at ¶ 60. Plaintiff

now seeks relief for this email, but such relief is directly prevented by Nevada law. Indeed, NRS 679B.670 provides as follows:

> **Any person**, governmental entity, insurer, employee or representative of an insurer, official of an investigative or law enforcement agency, employee of the Division, the Commissioner, the Attorney General or a member of the Fraud Control Unit **is not** subject to a criminal penalty or **subject to civil liability for libel, slander or any similar cause of action in tort if he or she, without malice, discloses information on a fraudulent claim** or suspicious fire.

NRS 679B.670 (emphasis added). Accordingly, Ms. Evers is not subject to civil liability for disclosing information to American Family Insurance for the purpose of investigating Mr. Petersen for obtaining loss-run reports without CDL Board Authority. Ms. Evers did not act with malice because, as a matter of law, Mr. Petersen was not the party that was entitled to obtain the loss-run reports. This is because NRS 687B.355(1) provides that the *policyholder*, *i.e.*, CDL, is the party that can obtain "information regarding claims paid on behalf of the policyholder." Resultantly, Ms. Evers did not act maliciously when she reported to American Family Insurance that it should investigate whether Mr. Petersen obtained the loss-runs by false pretenses, as he did not have that right as a matter of law.

Plaintiff's claims should be resolved as a matter of law on the ground that Ms. Evers did not commit actionable defamation. This is the thesis of the anti-SLAPP motion that Ms. Evers filed on March 5, 2026, to protect her Free Speech. Mr. Petersen seeks leave to amend to impose additional liability against Ms. Evers for an email that is not subject to civil liability pursuant to NRS 679B.670.

Thus, Leave to Amend should be ***denied.***

## II. <u>Brief Statement of Facts and Procedural History:</u>

### A. <u>Facts.</u>

This conflict started after Ms. Evers successfully led a 2023 petition to remove Mr. Petersen's spouse, Sharon Petersen ("Mrs. Petersen"), from the CDL Homeowner Association Board ("CDL Board") in Incline Village, Nevada. After Ms. Evers successfully led the petition to remove Mrs. Petersen from the CDL Board, Ms. Evers was appointed as President of the CDL Board. *See* **Exhibit 1**, at 3 (DEF4786). Following Ms. Evers' successful efforts to remove Mrs.

Petersen from the Board, Mr. Petersen went on a campaign of retaliation against Ms. Evers.

To convince CDL Homeowners that Ms. Evers was not a good Board President, Mr. Petersen—who was not on the CDL Board—worked to obtain insurance quotes from Menath Insurance ("Menath"). *See* **Exhibit 2** (showing the CDL Board Members on September 28, 2024); **Exhibit 3** (containing the email from Mr. Petersen forwarding information on the Menath quote to the CDL Board on October 27, 2024). Mr. Petersen tried to get this quote to prove to CDL Homeowners that he could get an insurance quote with cheaper premiums, and Ms. Evers was breaching her fiduciary duties. **Exhibit 4**. In fact, Mr. Petersen wrote in an email to only two Board Members (out of 5) that, "[o]nce I receive the finalized quotes, I will send them to all of the Board members for their review and if she decides to ignore it or say it is too late that she already signed the Alliant quote, I will then send out another letter to all the Owners with the quotes with comparisons to the Alliant quote and let them know she is violating her fiduciary duty in not selecting a quote that is in the best interest of the association." **Exhibit 4.** At the same time, Mrs. Petersen was working to obtain quotes from State Farm—again without Board authorization. **Exhibit 2** (DEF423). Thus, it was crucial to Mr. and Mrs. Petersen that they obtain a quote that was cheaper than Ms. Evers.

The problem for Mr. Petersen is that he was not on the CDL Board. **Exhibit 2; Exhibit 5** (DEF445). And, despite the assertion in his email on October 27, 2024, that Ms. Evers could not say that it was "too late to obtain a quote," the CDL Board had, in fact, voted to adopt a quote from Alliant Insurance on October 17, 2024, a week prior to Mr. Petersen's email. **Exhibit 5** (DEF446). It is crucial to note that Mr. Petersen attended this Board Meeting, *id.* at DEF445, and that Alliant, the insurance broker that ultimately secured the successful coverage for CDL, noted that unremedied aluminum wiring needed to be addressed for Alliant's quote to stand, *id.* at DEF446. Notwithstanding that CDL had already agreed to a policy from Alliant (by Board vote), Mr. Petersen believed that he could act for the Board, obtain a quote, and then accuse Ms. Evers of breaching her fiduciary duty for not accepting his quote. **Exhibit 4.** The other problem for Mr. Petersen was that the Declaration for CDL expressly recognizes that "the Board shall have the power to act on behalf of the Association" to "[m]aintain insurance as provided in this declaration and act." **Exhibit 6**, at

4815. Thus, only the CDL Board had the power to maintain insurance—not Mr. Petersen.

Again, Mr. Petersen did this so that he could try to prove to CDL Homeowners that Ms. Evers caused CDL insurance premiums to increase and financially harmed CDL Homeowners. **Exhibit 4.** This was retribution for Ms. Evers petitioning to remove Mrs. Petersen from the CDL Board. In this need to prove a point, Mr. Petersen intentionally omitted from Menath the fact that CDL's panels had aluminum wiring—a material fire risk. Mr. Petersen moved forward with his quote from Menath and forwarded it to the Board full Board on October 27, 2024. **Exhibit 3.**

Mr. Petersen also never told Menath that he was not on the CDL Board. He communicated to homeowners that the Menath policy had lower premiums because Ms. Evers improperly handled an insurance claim, which is patently false. He then organized a recall petition against Ms. Evers, attaching a letter to CDL Homeowners on February 25, 2025, stating that, "You may recall the Menath quote I sent you a while back was a lower premium and only a $5k deductible for all losses and not per building, but they would not proceed due to the aluminum wiring." **Exhibit 7** (DP 1609). What Mr. Petersen conveniently omitted from this correspondence is that he learned about the aluminum wiring on October 17, 2024, and intentionally did not tell Menath about the aluminum wiring so that his quote would be lower than the quote obtained by Ms. Evers that did, in fact, disclose the aluminum wiring. Nonetheless, Mr. Petersen moved forward with the recall petition.

Ms. Evers had a statutory right to respond to Mr. Petersen's efforts to recall her, *see* NRS 116.31036(2)(a)(3), and she did so on April 18, 2025. In her statutory right to respond, Ms. Evers stated, as alleged by Plaintiff,

> [Mr.] Petersen's intentional ***omission*** of the material facts to the Menath agent (a) that we had aluminum wiring in the subpanels that he didn't disclose and/or (b) that he was not acting on behalf of the board, in my opinion, ***constitutes*** insurance fraud.
>
> In making applications, the applicant has to perform due diligence and disclose all relevant material facts to the insurer. He did not.
>
> **This is huge—had the board relied on Petersen's false quote and later suffered a loss, say a fire, the impact to our community would have been disastrous**. Every insurance claim made under the HOA master policy would have been denied. The insurance company would have returned our premium, leaving CDL

> uninsured and devastated. This would have been a catastrophic uncovered loss and each of us would end up with less than $2000 to rebuild a complex that is valued in the range of $25 million under the master policy. Let that sink in for a moment.

*See* ECF No. 1, at 7 (emphasis added). Ms. Evers cited NRS 686A.2815, which forbids omitting or misrepresenting material facts from insurance applications, because an insurer can deny coverage if an omission is material to the hazard assumed by the insurer under NRS 687B.110. Ms. Evers then noted that, had CDL relied on the quote Mr. Petersen obtained without disclosure of the aluminum wiring, it would have been devastating for the CDL community if coverage were denied in a wildfire—aluminum wiring is a fire risk and nondisclosure of the aluminum wiring obviously could have invoked NRS 687B.110. Ms. Evers rendered a truthful, honest, and forthright analysis of the pertinent statutes and law.

After Ms. Evers responded to Mr. Petersen's recall petition ***truthfully***, Mr. Petersen decided that his prior false statements and his own course of conduct did not matter—instead, he decided to instigate litigation, misusing this Court's resources, and alleged that he was harmed by more than a million dollars. This is even though the law affirms that Ms. Evers' statements are protected by the First Amendment. *See Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 731-32 (9th Cir. 1999) ("[S]tatements by laypersons that purport to interpret the meaning of a statute or regulation are opinion statements, and not statements of fact."); *Friedman v. Boston Broadcasters, Inc.*, 522 N.E.2d 959 (Mass. 1988) (explaining that accusations of "insurance fraud" are not actionable as defamation if the underlying facts are disclosed and true).

Crucially, Mr. Petersen—in his deposition—admitted that the facts underlying Ms. Evers' statements on April 18, 2025, were **<u>true.</u>** First, Mr. Petersen testified that he never told the Menath Insurance agents, Ron Wright and Lori Nelson, about the aluminum wiring at CDL. *Petersen Deposition Transcript*, at p. 80 ¶ 3-8, p. 83 ¶ 18-24 p. 237 ¶ 5-8, p. 272, at ¶ 3-7 (Aug. 20, 2026) (**Exhibit 8)**. Yet, Mr. Petersen learned about the aluminum wiring *ten days* before he obtained the quotes. *Id.* at p. 109 ¶ 10-13, 19-23. Thus, Mr. Petersen had ten days to inform Menath insurance about the wiring and chose not to do so. Second, Mr. Petersen testified that he never told the Menath Insurance agents, Mr. Wright and Ms. Nelson, that he was not a board member and that the board

did not give him authority to obtain insurance quotes. *Id.* at p. 66 ¶ 13-17, p. 80 ¶ 17-25, p. 81 ¶ 1-3, p. 237 ¶ 19-21, p. 238. Thus, based on Mr. Petersen's deposition testimony, he did not disclose to Menath that there was aluminum wiring in the subpanels, and he did not disclose that he was not acting on behalf of the CDL Board. This is precisely what Ms. Evers alleged in her statement—that Mr. Petersen did not disclose the aluminum wiring and that he did not have authority to act on behalf of the Board.

The truth of Ms. Evers' statements is further supported by the testimony of Ron Wright. As the Menath agent that worked with Mr. Petersen, he testified that he filled out applications to receive the quote "[w]ith the assistance of the—Dan in this case." *Deposition of Ron Wright*, at p. 70 ¶ 12-23 (Sept. 24, 2026) (**Exhibit 9)**. Mr. Wright testified that the aluminum wiring "had a material impact on the quote." *Id.* at p. 130 ¶ 4-9. Mr. Wright testified that the property insurance quote from Westchester, through Menath, was revoked because of the aluminum wiring." *Id.* at p. 142 ¶ 4-7. Mr. Wright has no memory of Mr. Petersen telling him about the aluminum wiring. *Id.* at p. 167 ¶ 17-19. Mr. Wright confirmed that Mr. Petersen was an active participant in the quote process for Menath. *Id.* at p. 58 ¶ 1-4.

B. <u>Procedural history.</u>

Mr. Petersen filed his Complaint on February 4, 2026. ECF No. 1. Ms. Evers filed a Special Motion to Dismiss Pursuant to NRS 41.660 and/or Fed. R. Civ. P. 12(b)(6) (the "Motion to Dismiss") on March 5, 2026. *See* ECF No. 15. Mr. Petersen filed his Opposition on March 23, 2026. *See* ECF No. 23. Ms. Evers filed her Reply on April 9, 2026. *See* ECF No. 27. No ruling has been made by the Court on Ms. Evers' Motion to Dismiss. On September 9, 2026, Ms. Evers filed an Answer and Counterclaim because: (1) Mr. Petersen's deposition on August 20, 2026, showed that relief was warranted; and (2) the statute of limitations for her to seek relief would run on September 11, 2026. ECF No. 41. In response, Mr. Petersen filed his First Amended Complaint on September 30, 2026. ECF No. 44. He was not granted consent of counsel, and he did not have leave to amend pursuant to Rule 15. Resultantly, Ms. Evers filed her Motion to Strike on October 9, 2026. ECF 45. After a two-week extension, Mr. Petersen filed an Opposition to the Motion to

/ / /

Strike on November 6, 2026. ECF 51. On the same day, he filed a Countermotion for Leave to Amend. ECF 51. This Opposition follows.

## III. Argument:

### A. Leave to amend should not be granted.

There are five factors that courts consider under Rule 15 to assess the propriety of leave to amend: "bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint." *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004). Under the *Buckley* factors, leave to amend should be denied. The most important of the *Buckley* factors in this case is the futility of amendment—Mr. Petersen seeks leave to plead a legally impermissible claim. That said, the *Buckley* factors of bad faith, undue delay, and prejudice to the opposing party also weigh in favor of not granting leave. Thus, leave to amend should be *denied.*

#### 1. There is bad faith because of shifting allegations and theories.

Mr. Petersen filed his First Amended Complaint—without leave—after discovery directly refuted the allegations in his Complaint. Indeed, Mr. Petersen stated directly in his deposition that he did not tell Menath Insurance about the aluminum wiring, confirming the truth of what Ms. Evers said on April 18, 2025. *Petersen Deposition Transcript*, at p. 80 ¶ 3-8, p. 83 ¶ 18-24 p. 237 ¶ 5-8, p. 272, at ¶ 3-7 (Aug. 20, 2026) (**Exhibit 8)**. Likewise, Ron Wright testified in his deposition that he had no recollection of Mr. Petersen telling him about the aluminum wiring. *Deposition of Ron Wright*, at p. 167 ¶ 17-19. (Sept. 24, 2026) (**Exhibit 9)**. Realizing that the walls were closing in, Mr. Petersen commenced new litigation in the Eighth Judicial District Court of the State of Nevada (Case No. Case No. A-26-960030-C) against CDL and its management company, Incline Property Management, relating to Ms. Evers' statements. Now, to recoup his case, Mr. Petersen seeks to hold Ms. Evers liable for asking American Family Insurance to investigate how Mr. Petersen obtained the loss-run reports from American Family Insurance. ECF No. 44, at 11. As shown below, this allegation is futile as a matter of law. Thus, Mr. Petersen has not acted in good faith by seeking relief on another allegation.

/ / /

/ / /

**2. Defendant will suffer prejudice.**[1]

Putting Ms. Evers "'through the time and expense of continued litigation on a new theory, with the possibility of additional discovery,' would cause undue prejudice." *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1161 (9th Cir. 1989) (quoting *Troxel Manufacturing Co. v. Schwinn Bicycle Co.*, 489 F.2d 968, 971 (6th Cir.1973)). Here, Mr. Petersen did not file his Motion for Leave to Amend until November 6, 2026, which is only 24 days before the discovery cutoff. *See* ECF No. 42, at 5. Ms. Evers litigated this case under the allegations asserted by the Complaint, retained an expert witness based on the Complaint, conducted depositions based on the Complaint, filed her Motion to Dismiss based on the Complaint, and filed her Answer and Counterclaim based on the Complaint. While Ms. Evers filed her counterclaim on September 9, 2026, she is not seeking to extend the discovery deadline, is not seeking to conduct additional discovery for her counterclaims, and bases them largely on the documents that Mr. Petersen produced and the deposition testimony that Mr. Petersen provided on August 20, 2026. Resultantly, Ms. Evers should not be subjected to additional expense to conduct additional discovery based on Mr. Petersen's newly asserted allegation that she defamed him by email. ECF No. 44, at 11

**3. Amendment is futile as Mr. Petersen ignores the law and his admissions.**

Mr. Petersen argues that Ms. Evers' futility argument depends on disputed discovery.[2] *See* ECF No. 51, at 15-17. This argument fails because: (1) Mr. Petersen did not attach any "disputed" discovery to the Countermotion to show his position or clarify his *own* deposition testimony; and (2) Mr. Petersen refused to address Ms. Evers arguments, based on his own pleading, that the First

---

[1]Mr. Petersen argues in the Countermotion for Leave to Amend that he had the right to amend his complaint because the Discovery Plan and Scheduling Order (ECF No. 31, at 2) states that July 21, 2026, is the deadline "to file any motions to amend pleadings to add parties." This argument is contrary to Local Rule 26-1(b)(2), which states that "the deadline for filing motions to amend the pleadings or to add parties is 90 days before the close of discovery." Here, the close of discovery is November 30, 2026. *See* ECF No. 42, at 5. Thus, pursuant to Local Rule 26-1(b)(2), Mr. Petersen should have filed his Motion for Leave to Amend by September 1, 2026. Resultantly, Mr. Petersen should have also filed a Motion to Modify the Scheduling Order Pursuant to Rule 16(b)(4).

[2]Ms. Evers recognizes that Leave to Amend should be freely given, but the caveat to this general rule is that justice must require the amendment. *See* Fed. R. Civ. P. 15(a)(2). Here, justice requires allowing Ms. Evers to have her First Amendment right to Free Speech without protracted litigation.

Amended Complaint fails as a matter of law. Insofar as Mr. Petersen introduces new evidence in Reply to this Motion, Ms. Evers should have the opportunity to file a Sur Reply.

"Under futility analysis, dismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment." *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011) (internal quotation marks omitted).

**1. *Mr. Petersen's First Claim for Defamation is Futile.***

Mr. Petersen's first claim for Defamation in the First Amended Complaint is located at Paragraphs 68-91. The First Amended Complaint alleges that the following email that Ms. Evers sent to American Family Insurance, about Mr. Petersen, constitutes defamation:

> It is my understanding that in Nevada, misrepresenting yourself as a member of a homeowners' association (HOA) board to obtain information under false pretenses could be illegal. Specifically, this type of behavior may fall under fraud or identity misrepresentation depending on the details, particularly if it was done to gain confidential information. Nevada Revised Statutes (NRS) include laws against fraud and misrepresentation, which could apply here, particularly under NRS 205.377 for 'obtaining information under false pretenses."

ECF No. 44, at 11.

As the First Amended Complaint alleges, Ms. Evers sent this email on October 21, 2024, and asked American Family Insurance to investigate whether Mr. Petersen had obtained information from American Family Insurance on behalf of the CDL Board under false pretenses. *Id.* Mr. Petersen specifically alleges that Ms. Evers accused him of obtaining loss-run reports by false pretenses. *See id.* at ¶ 60. Plaintiff now seeks relief for this email, but such relief is directly prevented by Nevada law. Indeed, NRS 679B.670 provides as follows:

> **Any person**, governmental entity, insurer, employee or representative of an insurer, official of an investigative or law enforcement agency, employee of the Division, the Commissioner, the Attorney General or a member of the Fraud Control Unit **is not** subject to a criminal penalty or **subject to civil liability for libel, slander or any similar cause of action in tort if he or she, without malice, discloses information on a fraudulent claim** or suspicious fire.

NRS 679B.670 (emphasis added).

Ms. Evers did not act with malice because, as a matter of law, Mr. Petersen was not the party that was entitled to obtain the loss-run reports. This is because NRS 687B.355(1) provides that the *policyholder*, *i.e.*, CDL, is the party that can obtain "information regarding claims paid on behalf of the policyholder."[3] Thus, Ms. Evers, in good faith, asked American Family Insurance to investigate *whether* Mr. Petersen obtained the information by false pretenses, which would be fraud. Accordingly, Ms. Evers is not subject to civil liability for disclosing information to American Family Insurance for the purpose of investigating Mr. Petersen for obtaining loss-run reports without CDL Board Authority.

It appears that Nevada's appellate courts have not yet interpreted NRS 679B.670. That said, the Nevada Supreme Court recognizes that, "[w]hen interpreting a statute, legislative intent is the controlling factor." *State v. Lucero*, 127 Nev. 92, 95, 249 P.3d 1226, 1228 (2011) (internal quotation marks omitted); *see also* (*Las Vegas Dev. Grp., LLC v. Yfantis*, 173 F. Supp. 3d 1046, 1053-54 (D. Nev. 2016) ("If the state court has not construed the relevant statute, then [the Court] must interpret the statute as the Supreme Court of Nevada would and follow Nevada's rules of statutory construction.

The legislative history specifically addressing NRS 687B.355(1) is limited. Yet, the legislative history that was found shows a statement from Marty Howard, a Senior Deputy Attorney General, noting that Section 9 of Assembly Bill 135, which enacted NRS 687B.355(1), "**gave the great possible immunity from civil lawsuits**." *See* Hearing on A.B. 135 Before the Assembly Subcommittee on Commerce and Labor, 71st Leg. (Nev., March 29, 2011) (statement of Marty

[3] It is anticipated that Mr. Petersen will argue in Reply that NRS 116.31133 allowed him to obtain the loss-run reports. Yet, NRS 116.31133(3) gives the homeowner, like Mr. Petersen, the right to *only* obtain a certificate of insurance, not the loss-run reports. "[A] loss run is a report that shows the history of claims made against an insurance policy." *Bryce Corp. v. XL Ins. Am., Inc.*, No. 23 CIV. 1814 (KPF), 2023 WL 9004039, at *2 (S.D.N.Y. Dec. 28, 2023). NRS 687B.355(1), by its plain terms, provides the *policyholder* can receive the information regarding claims paid on behalf of the policyholder, and the statute is silent on any homeowner. Resultantly, any contention that Mr. Petersen had the right to obtain the loss-run reports is, as a matter of law, incorrect. Even if NRS 116.31133(3) did apply, Mr. Petersen had to provide a written request, and he did not.

Howard) (emphasis added); *see also* 2001 Nev. Stat., ch. 244, § 9, at 1095 (enacting NRS679B.670). Further, the Nevada Supreme Court has explained that it "may shun an interpretation that raises serious constitutional doubts and instead may adopt an alternative that avoids those problems." *Degraw v. Eighth Judicial Dist. Court*, 134 Nev. 330, 333, 419 P.3d 136, 139 (2018) (internal quotation marks omitted).

Based on legislative history and the avoidance canon, the Nevada Supreme Court would interpret NRS 679B.670 to proscribe liability against a person who, without malice, reports to an insurer that a third party improperly obtained the policyholder's claims history under NRS 687B.355(1). The Legislative history shows that it was drafted to give the "greatest protection." An interpretation of NRS 679B.670 that subjects Ms. Evers to civil liability runs afoul of the First Amendment. Ms. Evers' conduct was not malicious because NRS 687B.355(1) provides that the *policyholder*, *i.e.*, CDL, is the party that can obtain "information regarding claims paid on behalf of the policyholder." Thus, Ms. Evers did not make any statement with malice, *i.e.*, without knowledge that it was false or with reckless disregard for its veracity. *Pope v. Motel 6*, 121 Nev. 307, 317, 114 P.ed 277, 284 (2005) (noting that malice is a "stringent standard").

While NRS 679B.670 expressly states that it applies to the reporting of a "fraudulent claim," the term "claim" does not mean an actual report for loss to obtain benefits. NRS 679B.670 must be compared directly with NRS 679B.640, which states that "The [Insurance] Commissioner, through his or her investigators, **shall investigate fraudulent claims for benefits under an insurance policy**." (Emphasis added). The Legislature did not include the language "for benefits under an insurance policy" in NRS 679B.670, showing the Legislature intended to extend immunity more broadly to any person that reported any fraudulent claim or activity in connection with insurance. Indeed, "One basic tenet of statutory construction dictates that, if the legislature includes a qualification in one statute but omits the qualification in another similar statute, it should be inferred that the omission was intentional." *Smith v. Zilverberg*, 137 Nev. 65, 72, 481 P.3d 1222, 1230 (2021). Here, under the foregoing authorities, it is clear that NRS 679B.670 was intended to extend immunity to situations like the facts in this case, *i.e.*, when one party reports potential fraud to an insurer, even if it is solely in conjunction with improperly obtaining improper information.

Accordingly, Ms. Evers did not act maliciously when she reported to American Family Insurance that it should investigate whether Mr. Petersen obtained the loss-runs by false pretenses, as he did not have the right to obtain those documents as a matter of law. Thus, Mr. Petersen's claim for relief based on this email is futile, and he should not be granted leave to amend.

**2. *Mr. Petersen's Second Claim for Defamation is Futile.***

Mr. Petersen's second claim for Defamation in the First Amended Complaint is located at Paragraphs 68-91. In her statutory right to respond to Mr. Petersen's recall efforts, Ms. Evers stated, as alleged by Plaintiff,

> [Mr.] Petersen's intentional ***omission*** of the material facts to the Menath agent (a) that we had aluminum wiring in the subpanels that he didn't disclose and/or (b) that he was not acting on behalf of the board, in my opinion, ***constitutes*** insurance fraud.
>
> In making applications, the applicant has to perform due diligence and disclose all relevant material facts to the insurer. He did not.
>
> **This is huge—had the board relied on Petersen's false quote and later suffered a loss, say a fire, the impact to our community would have been disastrous**. Every insurance claim made under the HOA master policy would have been denied. The insurance company would have returned our premium, leaving CDL uninsured and devastated. This would have been a catastrophic uncovered loss and each of us would end up with less than $2000 to rebuild a complex that is valued in the range of $25 million under the master policy. Let that sink in for a moment.

*See* ECF No. 1, at 7 (emphasis added).

**As a matter of law**, Ms. Evers' statements in these Paragraphs were non-actionable opinions. The Ninth Circuit has stated, "'[a]bsent a clear and unambiguous ruling from a court or agency of competent jurisdiction, statements by laypersons that purport to interpret the meaning of a statute . . . are opinion statements, and not statements of fact.'" *Rodriguez v. Panayiotou*, 314 F.3d 979, 986 (9th Cir. 2002) (quoting *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 731-32 (9th Cir. 1999)); *accord Friedman v. Boston Broadcasters, Inc.*, 522 N.E.2d 959 (Mass. 1988).

/ / /

In *Rodriguez*, the defendant stated that the plaintiff entrapped him. As a matter of law, the Ninth Circuit ruled that this statement was an interpretation of law that cannot constitute defamation. 314 F.3d at 986. While *Rodriguez* made clear that "provably false assertions which are made in the context of an opinion are not absolutely protected from defamation liability," *id.* at 987, it recognized that an interpretation of law is not actionable. This case can be clearly resolved as a matter of law, just like *Rodriguez.*

Likewise, Nevada law recognizes that "[s]o long as it is based on true and public information, an evaluative opinion conveys the publisher's judgment as to the quality of another's behavior and, as such, it is not a statement of fact." *Lubin v. Kunin*, 117 Nev. 107, 112, 17 P.3d 422, 426 (2001) (internal quotation marks omitted). "Nor is a statement defamatory if it is absolutely true, or substantially true." *Pegasus v. Reno Newspapers, Inc.*, 118 Nev. 706, 715, 57 P.3d 82, 88 (2002).

Here, Ms. Evers also interpreted law and substantially true. Thus, her statement cannot constitute defamation. Mr. Petersen seeks relief for defamation based on the allegation that Ms. Evers slandered him by stating that Mr. Petersen's failure to disclose aluminum wiring to Menath Insurance ("Menath") to obtain insurance quotes and coverage, coupled with not disclosing that he was not acting on behalf of the CDL Board, would in her opinion "***constitute***" insurance fraud pursuant to NRS 686A.2815 if the CDL Board "had relied on his false quote" from Menath. ECF 44**,** at 13 ¶ 72. Ms. Evers cited NRS 686A.2815, which forbids the omission or misrepresentation of material facts in insurance applications, *see id.*, because an insurer can deny coverage if an omission is material to the hazard assumed by the insurer under NRS 687B.110. Ms. Evers explained, had the HOA relied on the quote Mr. Petersen obtained without disclosure, it would have been devastating for the CDL community if coverage were denied after a fire. ECF 44**,** at 13 ¶ 72.

Based on Mr. Petersen's own admissions, amendment is futile. Mr. Petersen testified in his deposition that he never told the Menath agents, Ron Wright and Lori Nelson, about the aluminum wiring at CDL. *Petersen Deposition Transcript*, at p. 80 ¶ 3-8, p. 83 ¶ 18-24 p. 237 ¶ 5-8, p. 272, at ¶ 3-7 (Aug. 20, 2026) (ECF No. 45-1). Mr. Petersen learned about the aluminum wiring *ten days* before he obtained the quotes. *Id.* at p. 109 ¶ 10-13, 19-23. Mr. Petersen testified that he never told the Menath agents, Mr. Wright and Ms. Nelson, that he was not a board member and that the board

did not give him authority to obtain insurance quotes. *Id.* at p. 66 ¶ 13-17, p. 80 ¶ 17-25, p. 81 ¶ 1-3, p. 237 ¶ 19-21, p. 238. Thus, based on Mr. Petersen's deposition testimony, he did not disclose to Menath that there was aluminum wiring in the subpanels, and he did not disclose that he was not acting on behalf of the CDL Board. This is precisely what Ms. Evers alleged in her statement—that Mr. Petersen did not disclose the aluminum wiring and that he did not have authority to act on behalf of the Board. Ms. Evers applied these facts to NRS 686A.2815 and rendered an opinion. This was protected by the First Amendment.

The truth of Ms. Evers' statements is further supported by the testimony of Ron Wright. As the Menath agent that worked with Mr. Petersen, he testified that he filled out applications to receive the quote "[w]ith the assistance of the—Dan in this case." *Deposition of Ron Wright*, at p. 70 ¶ 12-23 (Sept. 24, 2026) (**Exhibit 9**). Mr. Wright testified that the aluminum wiring "had a material impact on the quote." *Id.* at p. 130 ¶ 4-9. Mr. Wright testified that the property insurance quote from Westchester, through Menath, was revoked because of the aluminum wiring." *Id.* at p. 142 ¶ 4-7. Mr. Wright has no memory of Mr. Petersen telling him about the aluminum wiring. *Id.* at p. 167 ¶ 17-19. Mr. Wright confirmed that Mr. Petersen was an active participant in the quote process for Menath. *Id.* at p. 58 ¶ 1-4.

Notably, Mr. Petersen's Opposition never states that his deposition testimony was incorrect, attaches any portions of his testimony to show that it should be clarified, or otherwise disputes his admissions under the foregoing cases. This should be viewed as a concession pursuant to Local Rule 7-2(d). Thus, this Court should conclude that amendment is futile.

## IV. <u>Conclusion:</u>

This Court must deny Mr. Petersen's countermotion for leave to amend to protect Ms. Evers' First Amendment rights, which "protect[s] the freedom to think as you will and to speak as you think." *303 Creative, LLC v. Elenis*, 600 U.S. 570, 143 S. Ct. 2298, 230-04 (2023) (internal quotation marks omitted). Mr. Petersen seeks to assert a new claim for defamation in the First Amended Complaint that is barred—as a matter of law—pursuant to NRS 679B.670, which provides immunity to any person that discloses information about a potentially fraudulent insurance claim. Mr. Petersen's other claim for defamation in the First Amended Complaint, which is repeated from

the Complaint, is also barred as a matter of law because Ms. Evers made an opinion statement. Accordingly, this Court should deny leave to amend because amendment is futile.

**AFFIRMATION**

The undersigned hereby affirms that the foregoing pleading does not contain the Social Security number or personal information of any person.

Dated: November 20, 2026.

**HUTCHISON & STEFFEN, PLLC**

*/s/ Russell J. Carr*
Russell J. Carr, Esq. (15191)
100 W. Liberty Street, Suite 765
Reno, Nevada 89501
Telephone: (775) 853-8746
rcarr@hutchlegal.com
*Attorney for Kelly Mills Evers*

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. Civ. P. 5(b), I certify that I am an employee of Hutchison & Steffen, PLLC, and that on this date I caused to be served a true copy of the attached **DEFENDANT'S OPPOSITION TO PLAINTIFF'S COUNTERMOTION FOR LEAVE TO AMEND** on all parties to this action by the method(s) indicated below:

☒ by courtesy email addressed to:
Travis F. Chance, Esq.
Sean S. Cuff, Esq.
100 North City Parkway, Suite 1600
Las Vegas, Nevada 89106
tchance@bhfs.com
scuff@bhfs.com

☒ by using the Court's electronic notification system by submitting the foregoing to the United States District Court for the District of Nevada's ECF-filing System for Electronic Service upon the Court's Service List pursuant to Rule 26(a)(1). The copy of the document electronically served bears a notation of the date and time of service.

Dated: November 20, 2026.

*/s/ Hailey Teeter*
Employee of Hutchison & Steffen, PLLC

**EXHIBIT LIST**

| Exhibit # | Description | Pages* |
|---|---|---|
| Exhibit “1” | CDL Board Minutes from July 21, 2023, Showing Mrs. Petersen Removed From the CDL Board and Ms. Evers Being Appointed as Board President | 4 |
| Exhibit “2” | CDL Board Minutes from September 28, 2024 | 8 |
| Exhibit “3” | Email from Mr. Petersen to Full Board with Menath Insurance Quote Information on October 27, 2024 | 4 |
| Exhibit “4” | Email from Mr. Petersen to Two Board Members Only (Out of 5) About Insurance on October 24, 2024 | 3 |
| Exhibit “5” | CDL Board Minutes from October 17, 2024 | 8 |
| Exhibit “6” | Declaration of Coeur Du Lac Condominiums | 48 |
| Exhibit “7” | Mr. Petersen’s Letters to Homeowners with Recall Petition Dated February 25, 2025 | 7 |
| Exhibit “8” | Relevant Portions of Deposition Transcript of Daniel Petersen Dated August 20, 2026** | 13 |
| Exhibit “9” | Relevant Portions of Deposition Transcript of Ron Wright Dated September 24, 2026** | 10 |
| Exhibit “10” | Declaration of Russell J. Carr, Esq. | 4 |

**Includes exhibit cover page.*
***Only portions of the transcript cited in this pleading are included to comply with LR IA 10-3.*